## STATE v. GARY A. ROSSOW.

247 N. W. 2d 398.

October 8, 1976—No. 45635.

*Gerald C. Magee,* for appellant.

*Warren Spannaus,* Attorney General, *Richard J. Schieffer,* Brooklyn Center City Attorney, and *Jeffrey A. Carson,* Assistant City Attorney, for respondent.

Heard before Rogosheske, Todd, and Breunig, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Defendant appeals from a conviction of violation of Minn. St. 169.121, subd. 1(d), driving a motor vehicle while his blood-alcohol content exceeded 0.10 percent. The basis for this conviction was evidence of a blood test which showed defendant's alcohol content to be 0.235 percent. In denying defendant's motion to suppress this evidence, the trial court found that the test had been taken voluntarily within the meaning of § 169.121, subd. 2, which provides in part:

"Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving, operating, or in actual physical control of a motor vehicle in violation of subparagraphs a, c, or d of subdivision 1 hereof, the court may admit evidence of the amount of alcohol in the person's blood, breath, or urine as shown by a medical or chemical analysis thereof; *if said test is taken voluntarily or pursuant to section 169.123.*" (Italics supplied.)

Section 169.123 is the implied-consent law, subd. 2 of which provides in pertinent part as follows:

"* * * Any person may decline to take a direct blood test and elect to take either a breath, or urine test, whichever is available, in lieu thereof, and either a breath or urine test shall be made available to the arrested person who makes such an election. No action shall be taken against the person for declining to take a direct blood test unless either a breath, or urine test was available. At the time the peace officer requests such chemical test specimen, he shall inform the arrested person that his right to drive may be revoked or denied if he refuses to permit the test and that he has the right to have additional tests made by a person of his own choosing."

Defendant argues on appeal that his blood-test results should have been suppressed for two reasons. First, he argues that no test is voluntarily taken unless the implied-consent advisory has been given, and no implied-consent advisory was given here. Alternatively, defendant argues that, under the factual circumstances of this case, his consent to the blood test was coerced by the threat of license revocation and therefore involuntary.

Defendant's first argument would read the word "voluntarily" out of § 169.121, subd. 2, altogether, in disregard of the express language and legislative history of that statute. The disjunctive "or" is used to show that the evidence is admissible on two separate grounds, either pursuant to actual consent voluntarily given or pursuant to the implied-consent law. Our interpretation of this disjunctive language is supported by the legislative history, as lucidly explained by the trial court below:

"* * * The history of this statute prohibiting the driving of a vehicle while intoxicated and its relationship to 169.123 is set forth in State v. Capelle, 285 Minn. 205, 172 NW 2nd 556 (1969). For purposes of this memorandum, suffice it to say that since 1957 Section 169.121 has contained a provision authorizing the court to admit in evidence a medical or chemical analysis of a person's blood to show the amount of alcohol in the person's blood where the evidence was taken voluntarily. Section 169.123 was

not enacted until 1961. At the same time, Section 169.121, Subdivision 2, was amended to allow medical or chemical tests taken pursuant to the provisions of 169.123 to also be admissible as evidence of the amount of alcohol in a person's blood in an action under Section 169.121."

Had the legislature, when adding the implied-consent ground for admission of blood-test results, intended to remove the preexisting ground of voluntariness, we think it would expressly have done so. Accordingly, the omission of an implied-consent advisory in this case does not preclude a finding that defendant submitted to the blood test voluntarily.

Defendant's second argument raises the question whether the evidence was sufficient to support the trial court's factual determination that he did voluntarily take the blood test. While defendant had been slightly injured in an automobile accident and was on a hospital table receiving stitches for a cut lip when the officer asked for a blood sample, defendant does not dispute the trial court's finding that:

"* * * He was able to carry on a normal conversation and there was no indication of any sedation or of any state of shock or other condition which limited his ability to comprehend or impaired his judgment at the time Officer McComb talked to him at North Memorial."

Rather, defendant argues, based on his own testimony at trial, that the officer threatened to revoke his license if he did not take the blood test. Had such a threat been made, we would agree that the voluntariness of defendant's submission was vitiated. But defendant's testimony in this regard is uncorroborated and, indeed, was refuted by both Officer McComb and another officer also present, and the court expressly rejected defendant's testimony. The evidence clearly is sufficient to sustain the trial court's factual determination.

Finally, defendant argues that a mistrial should have been granted because the prosecuting attorney made a reference to

defendant's failure to call witnesses who might have corroborated portions of his testimony relating to events prior to his blood test. The trial court found that this misconduct had not "played a substantial part in influencing the jury to convict," citing State v. Caron, 300 Minn. 123, 128, 218 N. W. 2d 197, 200 (1974). Since defendant's blood-test results were alone sufficient under the statute to sustain a conviction, we agree that the prosecuting attorney's misconduct was not prejudicial.

Affirmed.