**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Kym A. COLEMAN, Respondent.**

**No. C9–84–832.**

Supreme Court of Minnesota.

Sept. 6, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., Minneapolis, for appellant.

C. Paul Jones, Minnesota State Public Defender, Minneapolis, for respondent.

## OPINION

WAHL, Justice.

Kym A. Coleman was charged by complaint with aggravated robbery in violation of Minn.Stat. §§ 609.245 and 609.11 (1984). He was convicted of the offense following a jury trial, and appealed the conviction to the Court of Appeals. The Court of Appeals, 356 N.W.2d 752, reversed the conviction, and remanded the case for retrial. We granted the state's petition for discretionary review. We reverse and affirm the conviction.

It was undisputed at trial, that on the night of September 12, 1983, the defendant Coleman took $25 from Robert Kuby. Kuby testified that he was sitting in his car that night on a street near Loring Park in Minneapolis when the defendant approached his car and, after a few minutes of conversation, asked Kuby for a ride home. Kuby said he knew the defendant slightly, and agreed to give the defendant the ride. The defendant gave him directions. Kuby further testified that, during the trip, the defendant raised the possibility of a sexual encounter between them, which Kuby declined. Kuby stopped the car a few blocks from where the defendant was staying, and testified that, at that point, the defendant initiated some sexual activity with which Kuby was minimally involved.

The defendant then asked Kuby if he could get out of the car to urinate. Kuby said he agreed and the defendant left the car. Kuby testified that the defendant then leaned back into the car, brandishing a knife and demanding Kuby's money. Kuby gave him $25 out of his wallet. When the defendant said he wanted all of Kuby's money, Kuby turned out his pockets to show the defendant he had nothing left. Kuby said the defendant also threatened to tell the police that he was only 15, and that Kuby had tried to rape him, if Kuby reported the incident to the police.

The defendant's account of the request for a ride home, and the directions he gave Kuby, were consistent with Kuby's, but his testimony diverged substantially from Kuby's regarding the nature of the ensuing events. The defendant stated that Kuby offered him $25 if the defendant would perform certain sexual acts, and that the defendant agreed. The defendant stated that Kuby first gave him the $25, and then became the sexual aggressor. The defendant said he then became upset and left the car, saying "[t]he joke's on you, I got your money. Ha-ha." The defendant also denied he possessed a knife or used one against Kuby.

Under cross examination, the defendant explained his motivation for taking the money in the following terms:

Q: You admit that you took [Kuby's] money, right?

A: (Nods head).

Q: You admit that you weren't entitled to it, right?

A: I felt I was. After he was rubbing all over me, * * * yeah, I felt that I was entitled to it. That's what I felt.

Q: That's all you have to say here?

A: Yeah.

Two other witnesses testified to similar robberies committed by defendant against them. One of the witnesses had misidentified the defendant from a photo display the day after he was robbed, however, and his in-court identification was made only after he saw the defendant in the hall prior to trial. He stated that he knew the defendant, though, and that he knew that the defendant wore an ileostomy bag. The second witness made an accurate out-of-court identification from a photo display, but the state was unable to reproduce the display. He did testify, though, that he had seen the defendant on several previous occasions in the Loring Park area. Both witnesses testified also that when the defendant had robbed them, the defendant had demanded their money, had used a weapon, and had threatened to tell the police he was a minor if the victims reported the incident to the police. One also testified that the defendant had asked him to empty his pockets.

After the close of testimony, counsel for the defendant requested that the jury be instructed on the offenses of theft by swindle, Minn.Stat. § 609.52, subd. 2(4)(1982), and prostitution, arguing that these two offenses were lesser included offenses of the crime charged, aggravated robbery. The trial court refused this request, instructing the jury on aggravated robbery alone. The jury returned a conviction for that offense.

On appeal to the Court of Appeals, the defendant contended that the court erred in refusing to instruct the jury on theft by swindle. He also raised issues regarding the admission of the evidence of other crimes, and the propriety of certain statements made by the state in closing argument. The Court of Appeals reversed the conviction, holding that the trial court's failure to instruct the jury on the offense of theft by swindle constituted reversible error. On appeal to this court, the state argues that the trial court properly denied the defendant's requested instruction. For the following reasons, we conclude that the decision of the Court of Appeals must be reversed and the conviction reinstated.

1. The state's principal contention is that the Court of Appeals improperly concluded that the trial court erred in refusing to instruct the jury on theft by swindle. The Court of Appeals based this conclusion on the ground that, in its view, theft by swindle is a lesser included offense of aggravated robbery. We determined in *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–126 (1975) that the trial court is required to instruct the jury on a lesser offense if the offense is a lesser included offense of the crime charged, and if there is evidence which produces a rational basis for a verdict acquitting the defendant of the offense charged and convicting of the lesser included offense. *See also, State v. Kinsky*, 348 N.W.2d 319, 325 (Minn.1984); *State v. Nurmi*, 336 N.W.2d 65, 67 (Minn.1983). Whether the trial court erred, then, turns first on whether theft by swindle is, as the Court of Appeals determined, a lesser included offense of aggravated robbery.

Minn.Stat. § 609.04, subd. 1(1984) defines a lesser included offense as any of the following:

(1) A lesser degree of the same crime; or

(2) An attempt to commit the crime charged; or

(3) An attempt to commit a lesser degree of the same crime; or

(4) A crime necessarily proved if the crime charged were proved; or

(5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

The defendant in this case argues that, under subdivision 1(4), theft by swindle is a crime necessarily proved if the crime of aggravated robbery is proved. In analyzing whether an offense is a lesser included offense, the court must look at the statu-

tory elements of the relevant offenses rather than at the facts of a particular case. *State v. Gayles*, 327 N.W.2d 1, 3 (Minn. 1982). If, after comparing the elements of each offense, "a person can commit the greater offense, as legally defined, without committing the lesser offense, as legally defined, the lesser offense is not necessarily included within the greater offense." *Kinsky*, 348 N.W.2d at 326. The state argues that theft by swindle is not a lesser included offense of aggravated robbery because it is possible to commit aggravated robbery without committing theft by swindle.

■ The Court of Appeals, in concluding that theft by swindle is a lesser included offense of aggravated robbery, relied on its decision in *State v. Nunn*, 351 N.W.2d 16 (Minn.App.1984) *reaffirmed* in *State v. Hines*, 354 N.W.2d 91 (Minn.App.1984). Insofar as *Nunn* was based on the conclusion that theft as set out in Minn.Stat. § 609.52, subd. 2(1) (1984) is a lesser included offense of aggravated robbery, we do not question its holding. We agree that aggravated robbery without the commission of such a theft would be assault. *Nunn*, 351 N.W.2d at 19. It is not necessary, however, to prove a theft by swindle in order to prove an aggravated robbery. The theft that must be proved is the intentional taking of the movable property of another without that person's consent, without a claim of right, and with the intention to deprive that person permanently of possession of the property. Minn.Stat. § 609.52, subd. 2(1). The defendant is entitled to a theft instruction under section 609.52, subd. 2(1) if there is evidence which provides a rational basis for a verdict acquitting him of aggravated robbery and convicting of theft under that provision.

■ On the record before us there was no rational basis for submitting a lesser-included theft instruction. In view of the defendant's testimony on cross examination, the jury could either have found him guilty of aggravated robbery or not guilty. *State v. Abraham*, 338 N.W.2d 264 (Minn. 1983). We hold that the trial court did not

err in refusing to submit the requested lesser included offense instruction.

■ 2. The defendant further asserts that his requested instruction on theft by swindle should have been given because it represented his "theory of the case," relying on our decision in *State v. Ruud*, 259 N.W.2d 567 (Minn.1977). In *Ruud*, we stated that is "beyond dispute that a party is entitled to an instruction on his theory of the case if there is evidence to support it." 259 N.W.2d at 578. The instruction requested in *Ruud*, however, raised an issue with respect to whether the state had proved the requisite intent to convict the defendants of the charged offense, not whether the jury should have the opportunity to convict the accused of a lesser charge. The application of the *Ruud* rule to the case before us is an issue we need not decide, however. We hold that the trial court properly refused to instruct the jury on the defendant's theory of the case because there was insufficient evidence to support that theory.

3. The defendant raised several other issues to the Court of Appeals which that court did not reach, because the court determined that the trial court's failure to submit the theft by swindle instruction was in itself reversible error. In the interest of judicial economy we reach those issues here to discern if there are any other grounds for reversal in this case.

■ The defendant asserted, as an alternative basis for reversal, that the trial court erred in admitting the testimony of the two witnesses who testified that the defendant had committed two other robberies. This evidence was admitted to show a common scheme or plan. The admissibility of evidence of other crimes in order to show a common scheme or plan is governed by Minn.R.Evid. 404(b) as interpreted by this court in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965) and *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967). In *Billstrom* we stated that evidence of other crimes must be "clear and convincing" to be admissible. 149 N.W.2d at 285. The defendant contends

that the witnesses' identifications of the defendant were too uncertain to meet this standard. He notes that one of the witnesses had failed to identify him in a photo display the day after the witness had been robbed, and that the photo display shown to the second witness was unavailable, insulating the procedure from defense challenge.

Although both witnesses' identifications do show some uncertainty, we cannot say that the trial court erred in finding the evidence clear and convincing. Both witnesses testified to other means of identification which tend to cure the defects in their initial identifications. The witness who misidentified the defendant also knew that the defendant wore an ileostomy bag; the other testified that he had seen the defendant on several previous occasions and knew his name. With this evidence and both witnesses' strikingly similar accounts of the details of the robberies committed against them, we cannot hold as a matter of law that the evidence that the defendant committed these other crimes was not clear and convincing.

■ The defendant further objects to the admission of these witnesses' testimony on the ground that its potential for prejudice outweighed its probative value. The trial court concluded that the evidence was necessary for the following reason:

> In the situation where you have members of the gay community alleging crimes against each other, I think it's probably fairly obvious that the average juror would be inclined to find it difficult to convict any gay robber simply because of their reaction to that lifestyle.
>
> So for that reason I find it necessary for this to support the State's case.

The defendant contends that for the trial court to find this evidence necessary because of jury bias against homosexual men was an abuse of discretion. He contends that bias is appropriately screened against only in jury selection. Otherwise inflammatory evidence has been deemed admissible, however, where the jury could fairly be presumed to be ignorant of the gravity or

nature of an offense. *See State v. (Alice) Cermak*, 365 N.W.2d 243, 247 (Minn.1985). The trial court could reasonably have assumed that a jury could reflexively discount the seriousness of Kuby's injury because he is homosexual; such an assumption does not in any case appear to rise to an abuse of discretion. We therefore hold that the trial court did not err in admitting this *Spreigl* evidence of other crimes.

4. The defendant finally contends that the state in closing argument both misstated the state's burden of proof and improperly commented on the defendant's character, thereby denying him a fair trial.

■ The defendant points to two statements made by the prosecution in closing argument which he claims improperly implied that the defendant had the burden to prove his innocence. The two statements are set forth in context here:

> Now, although you have heard about the robbery of Robert Kuby, the State has actually produced more than it promised. *The State, not the defense, but the State brought evidence of three robberies.* * * Credibility of the witnesses. First, Robert Kuby. The defense's theory is that he came in here because he is vindictive. He is mad because he lost $25. *The defense's theory isn't that this is some romantic love match where there's a long history of affection and then bad affection.* All that under the defense's theory that Mr. Kuby lost was $25. from somebody he doesn't know, doesn't have strong feelings about otherwise. (emphasis added).

The defendant rightly states that misstatements of the burden of proof are highly improper and constitute prosecutorial misconduct. *State v. Rossow*, 310 Minn. 399, 247 N.W.2d 398, 400 (1976) (prosecutorial misstatement of burden of proof is error); *See generally*, Crump, The Function and Limits of Prosecution Jury Argument, 28 S.W.L.J. 505, 519 (1974). (misstatement of burden of proof usually highly improper). The first statement identified by the defendant may suggest that the defense had

a burden to produce rebuttal testimony; however, counsel failed to object to this statement and did not seek a cautionary instruction. By failing to do either, the defendant is ordinarily deemed to have waived his right to have the issue considered on appeal. *Ture v. State*, 353 N.W.2d 518 (1984); *State v. Gunn*, 299 N.W.2d 137, 138 (Minn.1980). Moreover, the trial court properly instructed the jury on the burden of proof, and, in light of the strength of the state's case, it appears unlikely that the jury would have been influenced by this remark. As to the second statement, it is difficult for us to discern how this remark bears on the burden of proof at all.

■ The defendant lastly contends that the state improperly commented on his character. Since the defendant's character had not been put in issue, statements by the state tending to comment on his character were inadmissible and therefore would have been improper to bring to the attention of the jury in closing argument. *State v. Stufflebean*, 329 N.W.2d 314 (Minn. 1983); Minn.R.Evid. 404(a)(1). The defendant argues that the following statement made by the state was improper for that reason.

> In each case the event took place in and around Loring Park. In each case the victim was gay. In each case not only was the victim gay, but there was some sort of sexual come-on. In each case the victim was known, either by first name or last name or both to the defendant. Maybe not the best plan, but you should not interject what you might do, because, Ladies and Gentlemen, you are law-abiding citizens. You wouldn't be doing what—

The statement objected to by the defense, however, actually comments on the character of the witnesses for the prosecution, not the defendant. Therefore, it would appear that the defendant's claim of error is without merit.

Reversed, conviction reinstated.