**STATE of Minnesota, Respondent,**

v.

**Nathanial PARKER, Appellant.**

**No. C1-86-2143.**

Court of Appeals of Minnesota.

Sept. 22, 1987.
Review Granted Dec. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Edward P. Starr, St. Paul City Atty., George T. Stephenson, Asst. City Atty., St. Paul, for respondent.

Kerry L. Scott, St. Paul, Linda L. Bogut, Dean S. Grau, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ.

## OPINION

NORTON, Judge.

This appeal is from a judgment of conviction of two counts of gross misdemeanor DWI and from an order denying appellant's motions for a new trial, a *Schwartz* hearing, and for a judgment of acquittal. The jury found appellant Nathanial Parker guilty of driving with alcohol concentration over .10, and of having an alcohol concentration measured at over .10 within two hours of driving. Minn.Stat. § 169.121, subd. 1(d) and (e) (1986). The jury found Parker not guilty of driving while under the influence of alcohol. Minn.Stat. § 169.-121, subd. 1(a). We reverse and remand for a new trial.

## FACTS

Appellant Nathanial Parker was driving a vehicle that struck a pedestrian near the corner of Dale Street and Ashland Avenue in St. Paul, on June 28, 1986. The pedestrian, Betty McCoy, had stepped into Dale Street from between parked cars. McCoy had been at a party in a neighboring house that afternoon. She stated she left the party sometime before 9:30 p.m. She admitted having drunk five beers.

Brigid and Michael Borka were following Parker's car southbound on Dale Street. They noticed no speeding or reckless driving by Parker. When the Borkas reached

the scene, an off-duty paramedic was ministering to McCoy, police had been called, and a large crowd was beginning to gather.

The first police officer to arrive, Mike Ritchie, testified he was less than a mile from the scene and arrived within two minutes. Dispatch records showed the call was received at 9:53 p.m., and the first squad car arrived at 9:55. Ritchie placed Parker in the back seat of the squad car.

Officer Ritchie identified a passenger in Parker's car as Belinda Hogan. Hogan stated that McCoy was carrying a plastic cup when struck. Ritchie did not ask Hogan whether Parker had been drinking. Parker's other passenger was identified as Jackie Carter.

A second police car arrived shortly after Ritchie. Officer Mike Carter found Parker in the back seat of the squad car, smelled alcohol on him, and observed his eyes were bloodshot and watery. Carter found a vodka bottle in a pocket on the back of the driver's seat in Parker's car. Only ⅕ of the bottle's contents remained.

Defense witnesses testified police did not arrive promptly on the scene.

Parker's testimony was that he had had nothing to drink before the accident. He stated he drank a considerable amount after the accident from a bottle offered by a friend, Wallace Taylor, and then drank ⅔rds of a bottle of mouthwash, which had an alcohol content of 26.9%, all before he approached Officer Ritchie. He conceded he was under the influence when he took the Intoxilyzer test, which reported a blood alcohol concentration of .21.

At the omnibus hearing on July 24, 1986, Parker made a demand for a speedy trial. Trial was scheduled for September 9, but was continued that day, after Parker and his witnesses had appeared, due to the assigned judge's calendar. Trial was rescheduled for September 24, when Parker again appeared with some of his witnesses, but trial was continued to the following day because the assigned judge was in trial on another matter. Trial began September

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

25, which was the 61st day following the speedy trial demand.

Throughout trial, defense counsel complained to the court that the injured pedestrian and a friend, who were both witnesses, were mingling with jurors during breaks and openly appealing to their sympathies. The trial court directed counsel to instruct their witnesses to stay away from jurors, and warned the jury throughout the trial to disregard any attempts outside the courtroom to influence them. The court denied Parker's motion for a mistrial.

In closing argument, the prosecutor referred to Parker's failure to call his two passengers as witnesses:

> Where are the two women that were in the defendant's car, the two people who would know whether he'd been drinking before he drove or not.

Parker contends this reference was particularly improper because he claims he lost Belinda Hogan's testimony due to the trial delays.

### ISSUES

1. Was appellant's right to a speedy trial denied?

2. Did the trial court abuse its discretion in denying appellant's motions for a mistrial and for a *Schwartz* hearing?

3. Did the prosecution commit prejudicial misconduct in closing argument?

### ANALYSIS

1. *Speedy trial*

■ Parker argues he was denied his right to a speedy trial by the delay of trial until the 61st day following his demand. The rules of criminal procedure provide:

> On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period.

Minn.R.Crim.P. 11.10. The rule does not state the consequences of failure to commence trial within 60 days. This is left to judicial decision, and a violation of similar rules has been held to raise a presumption only that the constitutional right has been violated. *See* Comment, Minn.R.Crim.P. 11; *Welfare of J.D.P.*, 410 N.W.2d 1, 3 (Minn.Ct.App.1987) (violation of juvenile court 60–day rule "presumptive only" of constitutional violation); *State v. Curtis*, 393 N.W.2d 10, 11–12 (Minn.Ct.App.1986) (60–day time period for bringing misdemeanor charge to trial is presumptive only).

Constitutional violations are determined under the four-factor test identified in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): 1) length of delay; 2) reason for the delay; 3) defendant's assertion of the right; and 4) prejudice to the defendant.

■ "The length of the delay is to some extent a triggering mechanism." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Also, the reason for delay is closely related to the length of delay. *Id.* at 531, 92 S.Ct. at 2192. Here, not only was the delay minimal, but the reason for delay, the court's crowded calendar, is not one that weighs heavily against the state. *Id.* Furthermore, any prejudice suffered by Parker was not caused by the delay but by the number of continuances. Belinda Hogan returned for trial 15 days after the initial trial date, but then failed to appear one day later for the third (and final) trial setting. Her absence was caused by frustration with the continuances, rather than by violation of the 60–day rule. Moreover, Hogan's testimony could have been preserved by deposing her. We conclude, based on the factors identified in *Barker*, that Parker was not denied his right to a speedy trial.

2. *Outside influence on the jury*

■ The trial court denied Parker's motion for a mistrial, and a post-trial motion for a *Schwartz* hearing, which were based on witnesses' apparent attempts to influence the jury outside the courtroom.

In light of our ultimate disposition of the case, we need not fully address this issue.

However, the witnesses' comments and behavior may have raised a serious question of possible prejudice. The trial court then, on the motion of a party, would have been required to question each juror. Minn.R. Crim.P. 26.03, subd. 9. Parker, however, did not move the court to question the jurors but instead immediately moved for a mistrial. There was no abuse of discretion in denying this motion. *See State v. Graham*, 371 N.W.2d 204, 207 (Minn.1985) (trial court denial of motion for mistrial will not be reversed absent. a clear abuse of discretion).

### 3. *Prosecutorial misconduct*

■ Parker contends the prosecutor committed prejudicial misconduct by referring to Parker's failure to call Belinda Hogan, a reference improperly implying he had a burden to present evidence. *See State v. Rossow*, 310 Minn. 399, 402–03, 247 N.W.2d 398, 400 (1976) (DWI defendant did not call witnesses to corroborate his testimony that the officer threatened to revoke his license if he did not take a blood test). The state asserts the argument was a proper reference to Parker's burden under the statute to prove the affirmative defense of drinking *after* driving. *See* Minn.Stat. § 169.121, subd. 2 (a defense to having a test of .10 or more within two hours of driving).

The prosecutor's statement cannot be taken as referring in any significant way to Parker's affirmative defense. Under the circumstances, Parker's passengers would almost certainly have had more to say about whether Parker drank before the collision than after. There is no evidence they remained with him after the accident; however, Hogan or Carter could have satisfactorily explained the presence of the vodka bottle in the car and the fate of its contents.

Although Parker made no objection to the prosecutor's statement, its impropriety is fundamental and its damaging nature clear. *See State v. Gruber*, 264 N.W.2d 812, 817 (Minn.1978) (allowing appellate consideration of admissibility of evidence despite lack of objection). The prosecutor

in a criminal case may not comment on a defendant's failure to call witnesses. *State v. Fields*, 306 Minn. 521, 522, 237 N.W.2d 634 (1976). The error is particularly serious when the witness referred to is absent due to trial continuances not attributable to the defendant.

We conclude the prosecutor's comment "likely played a substantial part in influencing the jury to convict." *State v. Caron*, 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). Given Parker's defense of drinking after driving, the state needed more than the Intoxilyzer results to convict him. *Cf. Rossow*, 310 Minn. at 403, 247 N.W.2d at 400 (blood-test results alone sufficient to convict DWI defendant who claimed he was threatened before being asked to take the test).

### DECISION

The prosecution committed prejudicial misconduct, requiring a new trial, by referring to appellant's failure to call witnesses.

Reversed and remanded.