**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Nathanial PARKER, Respondent.**

**No. C1–86–2143.**

Supreme Court of Minnesota.

Jan. 22, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Edward P. Starr, St. Paul City Atty., George T. Stephenson, Asst. St. Paul City Atty., St. Paul, for appellant.

Kerry L. Scott, St. Paul, Linda L. Bogut, Dean S. Grau, Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

The issue on this appeal is whether the prosecutor's unobjected-to comment in closing argument on the defendant's failure to call certain witnesses to support an affirmative defense constituted plain error requiring a new trial. The court of appeals held that it was plain error. *State v. Parker*, 412 N.W.2d 419 (Minn.App.1987). Concluding that it was not plain error, we reverse that part of the court of appeals' decision awarding defendant a new trial and we reinstate defendant's conviction of gross misdemeanor DWI.

Shortly before 10:00 p.m. on Saturday, June 28, 1986, defendant, accompanied by two women, was driving his car on Dale near Ashland in St. Paul when an intoxicated woman ran in front of his car. Defendant applied his brakes but was unable to stop without hitting the woman. The accident occurred in front of Sweeney's Bar and was witnessed by several people. An off-duty paramedic at the bar administered first aid immediately. Although the woman was taken to the hospital, her injuries turned out to be relatively minor. Police were called at 9:53 p.m., within seconds of the accident. The first of several squad cars arrived on the scene at 9:55 p.m. and others arrived within the next couple minutes. When questioning defendant, who admitted that he was the driver, the police detected a strong smell of alcohol on his breath and noted that his eyes were bloodshot and watery. They decided to arrest defendant for DWI.

At the stationhouse, defendant was asked to perform two coordination tests, the finger-to-nose and the heel-to-toe tests. He performed neither satisfactorily. He was then read the provisions of the implied consent law and he agreed to submit to a breath test. The test, administered at 11:00 p.m., just over an hour after the accident, showed that defendant had a blood alcohol concentration of .21. Questioned by an officer after the taking of the test, defendant denied that he had drunk anything that day. When asked what he drank, he said vodka. When asked where, he said at home. When asked when he started and when he stopped, he said he did not drink that day and stopped the day before. He denied that he was under the influence. An inventory search of his car, which was towed, resulted in the discovery in the back seat of a bottle of vodka. The bottle holds just over 6 ounces; only 1 ounce remained in the bottle.

Defendant had a prior DWI conviction dated October 22, 1984. Accordingly, he was charged with gross misdemeanor DWI under Minn.Stat. § 169.121, subd. 3(a)

(1986). The three counts were as follows: (a) driving under the influence, section 169.-121, subd. 1(a); (b) driving when his alcohol concentration was .10 or more, section 169.-121, subd. 1(d); and (c) driving when his alcohol concentration as measured within 2 hours of the time of driving was .10 or more, section 169.121, subd. 1(e). The state's burden of proof with respect to the first two offenses included establishing that the defendant was under the influence or his blood alcohol concentration was .10 or more at the time of the act of driving. With respect to the third offense the state had to establish only that his concentration was measured at .10 or more within 2 hours of the time of the act of driving; the defendant under section 169.121, subd. 2, could then as an "affirmative defense" prove by a "preponderance of the evidence" that he consumed a sufficient quantity of alcohol after the time of driving and before the administration of the breath test to cause his alcohol concentration to exceed .10. The statute requires that the affirmative defense not be raised unless notice is given by the defense to the prosecutor before the omnibus or pretrial hearing. That was done here.

The case first came on for trial on September 9 but was rescheduled to September 24. September 24 was the last of the 60 days for trying the case within the 60-day time period (see Minn.R.Crim.P. 11.10). The judge to whom the case was assigned was in trial on that day and, over defense objection, rescheduled defendant's trial for the following day. On September 25 defense counsel argued that the case should be dismissed because of the violation of the 60-day rule. She argued that two witnesses, the two passengers, were lost because of the delay from September 9 to September 24 and that those witnesses were crucial to establishing the affirmative defense

provided by section 169.121, subd. 2. She made no offer of proof as to what these witnesses would testify and did not explain why the witnesses were no longer available other than to say that one had been speaking of leaving town. She also did not establish that either of the two would have been available if the trial had been held the day before, within the 60-day period, and she did not explain why she did not try to depose the witness who had been speaking of leaving town. The trial court denied a motion to dismiss (a denial which the court of appeals upheld, 412 N.W.2d at 421).

By stipulating that he had a prior DWI conviction, defendant was able to keep the prior conviction from the jury. *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn. 1984).[1]

The prosecutor apparently assumed that the defendant would testify that after the accident he had drunk from the vodka bottle later found in the back seat. The prosecutor therefore questioned various witnesses as to defendant's whereabouts in relation to his car in the 4 to 5-minute period between the accident and the time when the police arrived and began questioning defendant. A relative of the victim who saw the accident testified that defendant was slow in getting out of the car, that when he got out he looked like he was drunk, and that it looked to her as if he was trying to disappear into the crowd. A passenger in the car right behind defendant's car when the accident occurred testified that she did not notice any one in defendant's car when she got out and approached the scene and that she did not see anyone go back and get in the car. An expert called by the state testified that defendant's blood alcohol concentration of .21 at 11:00 p.m. indicated that defendant had approximately 13 or 14 drinks in his system at the time of testing and be-

---

**1.** In *Berkelman* we held that ordinarily in a prosecution for gross misdemeanor DWI the defendant, by judicially admitting the existence of the prior misdemeanor DWI conviction, may remove the issue as to the existence of this element from the case. Arguably this is one of those rare aggravated DWI cases in which the trial court, in the exercise of its discretion, could have rejected the stipulation and allowed the state to prove the prior conviction because the relevance of the evidence outweighed its potential for unfair prejudice. *State v. Davidson*, 351 N.W.2d 8, 11 (Minn.1984) (cited with approval in *Berkelman*, 355 N.W.2d at 396). The evidence was relevant evidence bearing on the believability of defendant's testimony that he drank all the alcohol in the few minutes after the accident and before the police arrived.

tween 14 and 15 at the time of the accident. He testified that if the defendant had had nothing to drink before the accident and that if in the time between the accident and the arrival of the police defendant had drunk all 5 ounces of vodka found missing from the bottle in the car, defendant's blood alcohol concentration at 11:00 p.m. would have been only .07, not .21. He testified that, given the .21 reading, if defendant had drunk before the accident and then had drunk the 5 ounces in the time between the accident and the arrival of the police, defendant's blood alcohol concentration on the basis of the amount previously consumed still would have been well above .10 at the time of the accident.

Defendant, who is 50 years old, testified that a friend set him up on a blind date with one of the two female passengers and that he was so excited about the date that on the way to pick her up he bought a large bottle of Listerine brand mouthwash so he could make a good impression on her. He claimed he was a recovering alcoholic and had had no drinks before the accident. He claimed that after the accident a friend with whom he had grown up, Wallace Taylor, approached him and offered him a swig from a new quart bottle of vodka to help him calm down. Defendant testified that he took a long drink from the bottle and then, to kill the alcohol smell, walked over to his car and drank ⅔ to ¾ of the bottle of mouthwash. He denied knowing what he did with the mouthwash bottle after he drank from it and he claimed that he knew nothing about the vodka found in the car. He testified that he did not tell the police about all this because they did not ask.

Wallace Taylor and another lifetime friend of defendant who said he just happened on the scene testified in corroboration of defendant's testimony about drinking from Taylor's bottle. However, another lifelong friend of defendant who just happened on the scene testified that he did not see defendant drink anything. A defense expert testified that 16 ounces of vodka alone drunk at the scene or 24 ounces of the mouthwash could have produced the .21 reading.

The prosecutor in closing argument focused on the defendant's explanation, that all the drinking had occurred after the accident and before the police arrived and spoke with him. In discussing this issue in detail she referred in passing to the two female passengers, saying, "Where are the two women that were in the defendant's car, the two people who would know whether he'd been drinking before he drove or not?"

Defense counsel did not object to this. In her closing argument she admitted that the only real issue was whether defendant drank the alcohol before the accident or after the accident. She argued that the state had not proven that defendant was under the influence or that he had an alcohol concentration of .10 or more at the time of the accident. She conceded that the state had proven that defendant had an alcohol concentration of .10 or more within 2 hours after the accident but she contended that the reading resulted from defendant's drinking after the accident. Without objection she said that as an alcoholic herself, she could say that for an alcoholic in defendant's position to be offered a drink was a "dream fantasy come true." She made no attempt to explain the absence of the two passengers but did say that "we can only bring in people we know," reminded the jurors that the judge had said earlier that some of the witnesses might not be able to be here, and said that defendant "brought in witnesses, the only witnesses he knew at the scene."

The trial court used the instructions recommended by MJIG (see MJIG 3.11). These instructions made it clear to the jury that the state had the burden of proving all the elements of the three offenses but that with respect to the charge of driving when the blood alcohol concentration is .10 or more within 2 hours after the act of driving the defendant had the burden of proving by a preponderance of the evidence that he consumed a sufficient quantity of alcohol after the actual driving and before the administration of the test to cause his alcohol concentration to exceed .10.

The jury found defendant not guilty of driving under the influence (possibly because of the testimony of the people who saw the accident that defendant's driving appeared to be normal) but guilty of the other two charges.

Reversing the conviction, the court of appeals said that "[t]he prosecutor's statement cannot be taken as referring in any significant way [to defendant's] affirmative defense," speculated as to what the testimony of the two passengers would have been, and excused defense counsel's failure to object by saying that the prosecutor's error was error of a fundamental nature that constituted plain judicial error requiring a new trial. 412 N.W.2d at 422.

■ The general rule is that a prosecutor may not comment on a defendant's failure to call witnesses, a primary reason being that such a comment might suggest wrongly to the jury that the defendant has some duty to produce witnesses or that he bears some burden of proof. *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). In *Caron,* the prosecutor commented on the defendant's failure to call certain alibi witnesses. We said that the misconduct was misconduct of a less serious sort for purposes of applying the harmless error rule. In this case it is questionable whether the prosecutor committed any misconduct, since the statement related to a matter on which defendant had the burden of proof. *Cf. State v. Race,* 383 N.W.2d 656, 664 (Minn. 1986) (stating that prosecutor's remarks concerning lack of evidence of vandalism of life raft were not intended to suggest that defendant had burden of proving his lack of guilt but were intended as a challenge to one of the defense's rebuttal theories).

Even assuming, however, that the prosecutor committed misconduct, we believe that the decision reversing defendant's conviction and granting him a new trial is clearly wrong in that it violates a number of different firmly-established doctrines governing appellate review of trial error:

■ First, defense counsel did not object or make any attempt to cure the error by addressing the statement effectively in her closing argument or by requesting curative instructions. In numerous cases involving comments by the prosecutor wrongly suggesting that the defendant had a burden of producing evidence, we have said that generally we will not consider the issue on appeal if defense counsel failed to object to the offending statement in the trial court. These cases include *State v. Sutherlin,* 396 N.W.2d 238, 241 (Minn.1986) (no objection or request for curative instruction); *State v. Coleman,* 373 N.W.2d 777, 782–83 (Minn. 1985) (no objection or request for curative instruction); *State v. Tungland,* 281 N.W.2d 646, 651 (Minn.1979) (no request for curative instruction); *Caron,* 300 Minn. at 127, 218 N.W.2d at 200 (no objection or request for curative instruction). Here defense counsel could have responded more effectively in her own closing argument and/or could have objected and requested a curative instruction to the effect that the defense had subpoenaed the witnesses in question just as the prosecutor had.

■ The court of appeals' decision also wrongly applies the plain error doctrine. Unobjected-to error is plain error only if it seriously affects substantial rights and only if it has an unfair prejudicial impact on the jury's deliberations. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985) (discussion of plain error doctrine in case involving prosecutorial misconduct). The test of prejudicial error that we have applied in cases involving improper comments of this sort is whether the improper comment likely played a substantial part in influencing the jury to convict. *Caron,* 300 Minn. at 127–28, 218 N.W.2d at 200–01 (holding that the comment in that case was not prejudicial).[2] Other cases holding that comment on the defendant's failure to call witnesses was not prejudicial include: *Race,* 383 N.W.2d at 664–65; *State v. Coleman,* 373 N.W.2d 777, 782–83 (Minn.1985); *Tungland,* 281

---

**2.** A stricter test is applied if the error was constitutional in nature or if the error is deemed to be of a particularly serious nature. *Id.*

N.W.2d at 650; *State v. Rossow*, 310 Minn. 399, 403, 247 N.W.2d 398, 400 (1976).[3] In this case we conclude that even if the prosecutor's statements were deemed to have been improper, the impropriety was harmless and nonprejudicial. The state's evidence of guilt of the two offenses of which defendant was found guilty was overwhelming, and the defendant's explanation for his very high blood alcohol level was incredible. We are convinced that the jury would have credited the state's evidence and rejected defendant's ludicrous explanation whether or not the prosecutor had made the statement in question.

Accordingly, we hold that the court of appeals erred in awarding defendant a new trial and we reinstate defendant's conviction of gross misdemeanor DWI.

Reversed and judgment of conviction reinstated.

POPOVICH, J. took no part in the consideration or decision of this case.

---

**3.** *Rossow* was a DWI prosecution in which the prosecutor referred to defendant's failure to call witnesses who might have corroborated parts of his testimony relating to events preceding his blood test.