**STATE of Minnesota, Respondent,**

v.

**Richard Allen LORY, Appellant.**

**No. CX–96–67.**

Court of Appeals of Minnesota.

Jan. 7, 1997.

Review Denied April 15, 1997.

426

Hubert H. Humphrey, III, Attorney General, and Thomas Erik Bailey, Assistant Attorney General, St. Paul, and Timothy R. Faver, Beltrami County Attorney's Office, Bemidji, for Respondent.

John G. Westrick, Marcia McDowall–Nix, and Kari L. Clark, Westrick & McDowall–Nix, P.L.L.P., St. Paul, and Robert D. Miller, Robert D. Miller & Associates, Minneapolis, for Appellant.

Richard Allen Lory pro se.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

CRIPPEN, Judge.

Richard Allen Lory appeals his judgment of conviction for second-degree felony murder, arguing that the trial court erred by instructing the jury on felony murder because felony murder is not an "included offense" of second-degree intentional murder, the charge stated in the indictment of appellant. In addition, appellant claims that (1) his conviction violates the double jeopardy provisions of the United States and Minnesota constitutions; (2) prosecutorial misconduct requires vacating his sentence; and (3) he was denied his constitutional right to present a complete defense. We affirm.

## FACTS

Early in the morning on August 22, 1993, appellant Richard Lory and his wife Linda received a phone call informing them that their fourteen-year-old daughter had been sexually assaulted the previous night at a slumber party. The couple then learned from their daughter that brothers Joe and Bruce Bradach, Jr. and the Bradachs' stepbrother Adam Andler were involved in the assault. Appellant planned to take his daughter to the hospital but instead stopped at the Bradach home on Gull Lake.

Appellant confronted Bruce Bradach, Jr., his father, and a friend of the younger Bradach. After an exchange of words, appellant retrieved a loaded shotgun from the back of his truck and pointed it at the boys. Appellant's wife left the truck and pushed Bradach Sr., who was observing the events from a distance, towards her husband. Appellant then opened fire, striking Bradach Jr. in the thigh and Bradach Sr. in the stomach. Appellant's wife was wounded by the same bullet that struck Bradach, Sr. Appellant then fatally shot Bradach Jr. and fled in his truck with his wife and daughter.

The criminal complaint charged appellant with felony murder, intentional second-degree murder, and attempted second-degree murder. The grand jury returned indictments for intentional second-degree murder and first-degree assault. Following appellant's first conviction for felony murder, he requested a *Schwartz* hearing regarding alleged *ex parte* communications between the jury foreman and the presiding judge. The judge set the verdict aside, and appellant was granted a new trial. The judge recused himself from the second trial.

Before the start of the second trial, appellant filed a motion to dismiss, arguing that the felony murder instruction was improper because it was not contained in the grand jury indictment. The motion was denied and the second jury was instructed on felony murder, and the predicate offense, second-degree assault (assault with a dangerous weapon). The second jury was discharged after deadlocking.

Before jury selection began for appellant's third trial, he filed a motion to dismiss based on a claim of double jeopardy. This motion was denied and the case proceeded to trial. The third jury convicted appellant of felony murder, and the court sentenced him to 150 months imprisonment. This appeal followed.

## ISSUES

1. Did the trial court err by instructing the jury on felony murder when appellant was indicted for second-degree intentional murder?

2. Did appellant's conviction violate the double jeopardy provisions of the United States or Minnesota Constitutions?

3. Is appellant entitled to a new trial due to prosecutorial misconduct?

4. Was appellant denied an opportunity to present a complete defense?

## ANALYSIS

### I. Jury Instruction on Felony Murder

In reviewing a trial court's jury instructions, we examine the record for abuse of discretion and errors of law. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986); *Alevizos v. Metropolitan Airports Comm'n,* 452 N.W.2d 492, 501 (Minn.App.1990), *review denied* (Minn. May 11, 1990). Questions of law are

reviewed de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Minn.R.Crim.P. 17.05 provides that the trial court may permit amendment of an indictment at any time before the verdict if "no additional or different offense is charged" and the substantial rights of the defendant are not prejudiced. *See also State v. Pettee,* 538 N.W.2d 126, 131 (Minn.1995) (citing Minn.R.Crim.P. 17.05) (finding that after grand jury consideration, the state cannot amend the indictment to charge a greater offense), *cert. denied* —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996). Appellant argues that the jury instruction on second-degree felony murder was an impermissible amendment of the indictment under rule 17.05 because felony murder is a "different offense" from the offense charged.

Minn.Stat. § 609.04 (1994) provides that a defendant may be convicted of either the crime charged or an included charge (including a "lesser-included offense"), but not both. Pertinent to this case, the statute defines an included offense as one of "lesser degree," or "a crime necessarily proved if the crime charged were proved." Minn.Stat. § 609.04.

■ Whether an offense is a "lesser-included offense" is determined by examining the elements of the offense rather than the facts of a particular case. *State v. Roden,* 384 N.W.2d 456, 457 (Minn.1986). A lesser offense is necessarily included in a greater offense if it is impossible to commit the latter without also committing the former. *Id.* (citing *LaMere v. State,* 278 N.W.2d 552, 558 (Minn.1979)).

■ Second-degree intentional murder is defined as causing the death of another "with intent to effect the death of that person" but without premeditation. Minn.Stat. § 609.19 (1994). Second-degree felony murder, under Minn.Stat. § 609.19(2) (1994), occurs when one causes the death of another, "without intent to effect the death," but while committing or attempting to commit certain crimes, including assault, "with force or violence." Unlike intentional murder, second-degree felony murder does not require proof of a spe-

cific mental element. *State v. Branson,* 487 N.W.2d 880, 882 (Minn.1992).

■ Appellant argues that felony murder cannot be an included offense because: (1) felony murder and second-degree intentional murder are both designated "second degree" offenses and (2) felony murder requires finding a *lack* of intent, and second-degree intentional murder requires *proof* of intent.

Historically, felony murder was designated as murder in the third degree, and as a crime of "lesser degree" there was no question that it was an included offense of second-degree intentional murder. *State v. Leinweber,* 303 Minn. 414, 421, 228 N.W.2d 120, 125 (1975) (stating that every lesser degree of murder is an "included offense"); *see* Minn.Stat. § 609.04. To determine if felony murder remains an included offense of second-degree intentional murder, we turn to the other pertinent statutory factor enumerated in Minn.Stat. § 609.04, that is, whether felony murder is a crime necessarily proved if the crime charged were proved.

■ Appellant's theory that the intent element of second-degree intentional murder "negates" the "lack of intent" element of felony murder is erroneous. Lack of intent is not an element of felony murder. *State v. Cole,* 542 N.W.2d 43, 51 (Minn.1996). In *Cole,* the defendant argued that a verdict of second-degree felony murder and second-degree intentional murder were legally inconsistent because *lack* of intent was a necessary element of felony murder, negating the specific intent element of second-degree, intentional murder. *Id.* at 51. The supreme court disagreed, finding that felony murder *allows* a finding of guilt by imputing malice when there is no specific intent to kill, but that lack of intent is not an element of the offense.

Furthermore, had the jury concluded that appellant committed second-degree intentional murder, then his crime of murder during the commission of felony assault with a dangerous weapon was necessarily proven because the intentional murder charge was based on evidence that appellant shot Bradach, Jr. in the chest after first wounding him. We conclude that felony murder is an

included offense of second-degree intentional murder. And because there was no evidence that the grand jury ever considered but rejected the felony murder charge, we conclude that the jury instruction did not constitute an impermissible amendment of the grand jury indictment.

▌ We also note that appellant failed to object to the jury instructions when they were given. Generally, a party waives any objection to a jury instruction if the objection is not raised at trial, although plain errors in such matters may be considered on appeal. *State v. Mosley*, 414 N.W.2d 461, 465 (Minn. App.1987) (citing *State v. Edwards*, 343 N.W.2d 269, 277 (Minn.1984)), *review denied* (Minn. Dec. 22, 1987), Minn.R.Crim.P. 31.02. Appellant insists that the felony murder instruction raises due process concerns because he has a fundamental right to be convicted only of the crime charged, and no other. Thus, the instruction on felony murder required his personal waiver on the record. We note initially that the fact that a personal waiver does not appear in the record does not mean that there was no waiver. *State v. Ware*, 498 N.W.2d 454, 457 (Minn. 1993). But because appellant's waiver theory is based on the erroneous presumption that felony murder is not an included offense of second-degree intentional murder, we find it unnecessary to analyze further the merits of his claim that a personal waiver on the record was required before instructions on felony murder could be submitted to the jury.

## II. Double Jeopardy

▌ Appellant argues that his second and third re-trials were barred by the double jeopardy provisions of the United States and Minnesota constitutions because the first trial court judge's alleged *ex parte* communications with the jury foreman were intentional and designed to prejudice Lory's chances for acquittal. Testimony by jurors during the *Schwartz* hearing indicated that the jury foreman left the jury deliberation room at least once, and upon returning implied that he had spoken personally to the judge and that the judge told the jury foreman that "he would not accept a hung jury and we had to make a decision." The judge's testimony,

corroborated by the testimony of the courthouse bailiffs, is that the only contact he had with a juror involved a reiteration of the jury instructions to a juror as the jurors were being moved out of the courtroom.

Both the United States and Minnesota Constitutions prohibit serial prosecutions for the same crime. U.S. Const. Amend. V; Minn. Const. art. I, § 7. Jeopardy attaches once a jury is empaneled. *State v. Mc-Donald*, 298 Minn. 449, 452, 215 N.W.2d 607, 609 (1974). If jeopardy attached and the declaration of mistrial was at defendant's request or with his consent, the state may retry the defendant "unless the mistrial was necessitated by bad faith" or the "intentional misconduct of the trial court" where there was a design to prejudice the defendant's chances for an acquittal or to "goad him into requesting a mistrial." *State v. Gwara*, 311 Minn. 106, 108, 247 N.W.2d 417, 419 (1976).

Appellant filed a motion for a new trial based on the alleged *ex parte* communications between the jury foreman and the trial court judge. Because the original verdict was set aside at appellant's request, we must focus our inquiry on whether the trial court engaged in intentional misconduct. *Gwara*, 311 Minn. at 108, 247 N.W.2d at 419. Nothing in the record supports appellant's claim of intentional misconduct by the trial court judge. The record amply demonstrates that the judge set aside the first verdict for three reasons. First, the jury foreman left the jury room at some point and was unescorted by a bailiff. Second, the judge spoke briefly with one of the jurors as they were exiting the courtroom, on their way to the jury room. Finally, three jurors believed that the jury foreman and the judge had conversed during deliberations. The transcript of the *Schwartz* hearing indicates that appellant's counsel had the opportunity, during the hearing, to explore the allegation that a conversation between the judge and foreman actually occurred. There is no evidence to suggest that it did. Because there is no evidence that the trial court intentionally engaged in misconduct intended to prejudice appellant's case, his subsequent re-trials were not barred by the double jeopardy provisions of the United States or Minnesota constitutions.

## III. Prosecutorial Misconduct

Appellant contends that prosecutorial misconduct requires that his sentence be vacated. His argument focuses on the emotional outburst of Ann Bradach, the victim's stepmother, which occurred during the defense cross-examination of Bruce Bradach, Sr. Ann Bradach objected to a line of questioning and shouted out "Damn liars. You are a murderer." A recess was called immediately. In chambers, the judge asked the defense counsel if he wished to have any instructions or comments to the jury on Mrs. Bradach's comments. Defense counsel replied, "No, I have nothing." In closing arguments, the prosecution referred to Ann Bradach's behavior as "justifiable." The record indicates that in a conference in chambers prior to closing arguments, the judge asked the prosecuting attorney about Ann Bradach's behavior. The prosecuting attorney acknowledged that the outburst had strong impact, but added that he would talk about it in his closing argument. Defense counsel stated that he had a "problem" with the jury's exposure to the outburst, but made no objection to the prosecution's proposal to refer to the event in closing arguments, and referred to it himself in his own closing arguments. In his final instructions to the jury, the judge commented that the jury had witnessed an outburst from a witness seated in the spectator section of the courtroom—an obvious reference to Ann Bradach—and also that they had observed Bruce Bradach, Sr. break down sobbing on the witness stand. The jury was instructed to set aside their personal feelings regarding these incidents.

Generally, the failure to object to a prosecutor's statement or to cure in closing argument what the defense believes was error, forfeits a defendant's right to have the issue considered on appeal. *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988); *see also State v. Atkins*, 543 N.W.2d 642, 647 (Minn.1996) (indicating that trial counsel should object or seek curative instruction from judge to preserve issue for appeal) (citing *State v. Kline*, 306 N.W.2d 132, 133 (Minn.1981)).

Even without occurrence of an objection, a trial court error may require reversal if it is plain error, one that seriously affects substantial rights and has an unfair, prejudicial impact on the jury's deliberations. *Parker*, 417 N.W.2d at 647 (citing *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)). The test of prejudicial error is whether the improper comments likely played a substantial part in influencing the jury to convict. *Id.*

■ We assume for purposes of examining the issue that the prosecutor's comment that Ann Bradach's behavior was "justifiable" was improper. The jury may have assumed the prosecutor was referring to Ann Bradach's statement that Lory was "a murderer" rather than to her outrage regarding the line of questioning. Even if the comment is improper, the record does not support a conclusion that it was prejudicial. The jury heard a great deal of emotional testimony in this case and received an instruction from the judge on the proper treatment of that testimony. We conclude that it is unlikely the prosecution's use of the word "justifiable" in closing remarks so influenced the jury that the remark made it impossible for them to render a reasonable verdict. *See State v. Coleman*, 373 N.W.2d 777, 783 (Minn.1985) (finding that comment made during closing weighed against overall strength of state's case shows comments not likely to be prejudicial). Appellant's claim of prejudicial prosecutorial misconduct is without merit.

## IV. Right to Present a Complete Defense

Appellant argues that he was not allowed to present a complete defense, although he does not indicate whether he believes this should result in a new trial or whether his sentence should be vacated. The claim is based on appellant's purported inability to present evidence to the jury regarding the circumstances surrounding his daughter's rape, specifically, his belief that Bradach, Sr. had something to do with the sexual assault. Appellant apparently believes that had he been able to present this evidence better, his theory that he was ambushed by the Bradach family on the morning of August 22, 1993, and that he acted in self-defense would have been more plausible to the jury.

Every criminal defendant has a due process right to fundamental fairness and to be "afforded a meaningful opportunity to present a complete defense." *State v. Richards,* 495 N.W.2d 187, 191 (Minn.1992) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). The right to present a defense includes the opportunity to develop the defendant's version of the facts, so the jury may decide where the truth lies. *Id.* at 194 (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)).

Prior to the first trial, the defense and prosecution agreed that evidence regarding what appellant had been told about the assault, as well as evidence bearing on his belief regarding what had happened, would be considered relevant. Conversely, counsel also agreed that evidence concerning the actual facts of the sexual assault would be considered irrelevant and inadmissible.

The record of the third trial shows that the court generally sustained the prosecution's relevancy objections to defense questions that focused on the rape offense. Despite this, defense counsel was able to develop its theory that the Bradachs had been forewarned of the Lorys' arrival at their house and were armed and lying in wait for them. Consequently, there is no evidence that appellant was denied his right to present a complete defense.

**Affirmed.**