STATE v. W. E. HOPFE.

82 N. W. (2d) 681.

May 3, 1957—No. 36,907.

*Bang, Nierengarten & Hoversten,* for appellant.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor General, *John R. Murphy,* Assistant Attorney General, and *Wallace C. Sieh,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant appeals from a judgment entered January 23, 1956, convicting him of the crime of sodomy. The offense for which he was convicted was committed with one Robert on April 15, 1955. Robert was then of the age of 15 years.

On appeal it is defendant's contention that the trial court erred (1) in refusing to instruct the jury that as a matter of law one Terrence, age 14 years, and a witness for the state, was an accomplice in the commission of the crime with which defendant was

charged; (2) in refusing to instruct the jury that, if it found Terrence to be an accomplice, it must then find in defendant's favor because of the absence of evidence to corroborate the testimony of either Robert or Terrence as accomplices; (3) in receiving in evidence without sufficient foundation three towels claimed to have been used in connection with the offense charged; and (4) in receiving in evidence a mattress claimed to have been used May 4, 1955, in the commission of a similar offense.

Both Robert and Terrence testified that they had first met defendant at his office at about 9 p. m. on the evening of April 6, 1955; that they had gone there because one Leschefske had told them that defendant would pay money to those having homosexual relations with him and they desired to obtain money from him in exchange for submitting to him in such relationship; that together they had decided on doing this as a "joint enterprise" in which both would share equally; that on this occasion they had mentioned Leschefske's name to defendant; that Terrence had then asked defendant if he would drive him to Mapleview where he lived; that defendant agreed to this and that during this ride he had given Terrence $2, from which Terrence had given Robert $1; that after their arrival at Mapleview, at defendant's request, Robert had left the car; that according to Terrence defendant had then driven him out to a spot some distance from Mapleview where he had placed his hands upon Terrence indecently; and that thereafter they had returned and met Robert.

Both boys testified that while together during the evening of April 15, 1955, Terrence had telephoned defendant at his home but that at first they could not reach him there; that shortly thereafter the same evening Robert had called defendant and reached him there, and had then arranged for defendant to meet them at his office that same evening; that their purpose in arranging this meeting was to obtain money from defendant in exchange for having homosexual relations with him; that they met defendant at his office about 8:30 or 9 p. m. that night and that defendant then told

them that he wished to be alone with Robert and that Terrence had left to wait at Henry's cafe nearby.

Robert testified that thereupon he and defendant had engaged in homosexual relations, the offense for which defendant was later convicted; that after commission of this act defendant had taken a towel from a cardboard carton in his storeroom adjoining his office and that he and defendant had used the towel which was then returned to the carton by defendant. He described the towel, the carton, and the location thereof in the adjoining storeroom in some detail. He further testified that thereafter defendant had given him $3 and had told him to tell Terrence to come up; that when Terrence had returned defendant had given him $3 also; and that thereafter they both had left. This latter testimony was corroborated by Terrence.

Both boys testified that during the evening of April 28, 1955, they had called upon defendant at his home to request that he again come to his office but that defendant had not answered his door on this occasion. They both testified that during the evening of May 4, 1955, they were driving around Austin with Leschefske; that at about 8:30 p. m. that night Terrence had left the car to go to defendant's office to obtain change for a $100 bill which Terrence had and which, it later developed, he had stolen. Terrence testified that, after he had called upon defendant at his office, he and defendant had again engaged in homosexual relations and that in connection therewith a mattress procured by defendant from the storeroom had been used; that after commission of this act defendant had taken some towels from the storeroom and that he and defendant had used them; that shortly thereafter Robert had knocked on the door and that he had let Robert in; that he then asked defendant if he would call up the bank and tell someone there to change the $100 bill for him; that defendant had agreed to do this and that thereupon he had left and Robert had remained; that when he arrived at the bank he had found it closed and he had returned to defendant's office; that after a while its door was opened and he was let in by Robert; that thereupon he had given the $100 bill to defendant and had told

defendant that he would return the next day for the change there-from; that a day or so later he had returned and defendant had given him such change.

Robert testified that when he arrived at defendant's office on this occasion he had observed that defendant was not wearing shoes, collar, coat, or necktie, and was in the act of tying a mattress in a roll; that after Terrence had left for the bank he and defendant had engaged in homosexual relations and that defendant had then given him and Robert each $3; that on this occasion also they had used towels from the cardboard carton in the storeroom.

The state submitted to both boys for examination a mattress and three towels with defendant's name stamped thereon, which the police had taken from the cardboard carton in defendant's storeroom at the time of his arrest on May 31, 1955. The boys identified the mattress as the one they had seen in defendant's office and testified that the three towels were similar to the ones kept in the carton and used by them and defendant on the occasions described. The cardboard carton was likewise submitted to them for examination and identified by them as the one in which the towels had been kept in defendant's storeroom.

Robert Nelson, detective in the Austin Police Department, testi-fied that, after an interview with Robert and Terrence on May 17, 1955, with respect to the $100 bill, he had talked to defendant in the office of George Roope, Austin Chief of Police, on May 20, 1955; that on this occasion he had asked defendant if he knew Terrence and Robert and if he had cashed a $100 bill for them; that defend-ant had replied that he did not know them but had cashed a $100 bill for two boys; that when asked why he had cashed a $100 bill for boys he did not know, defendant had stated he would not answer any further questions until he had consulted his attorney; that on May 31, 1955, he went to defendant's office to arrest the defendant for the crime charged, and had then searched for and found the card-board carton, towels, and mattress in the location in the storeroom in which the boys had told him they would be found; that these articles had then been marked for identification by the police depart-

ment and remained in his custody until the following morning when he drove to St. Paul to the Minnesota State Crime Laboratory where they had been delivered to the director thereof; that at the State Crime Bureau in his presence the carton had been opened and the towels therein marked for identification by the bureau.

Anthony Longhetti, analyst for the State Crime Bureau, testified that the exhibits had been in the custody of the bureau after June 1, 1955, and had been in his custody for the purpose of making tests between July 2 and July 7, 1955; that they had been kept in a locked cabinet to which only he and the director had access; that standard procedure was followed in keeping and testing the exhibits; that they had remained in his custody until he had taken them into court for defendant's trial; that he had examined and found semen stains on three of the towels and on the mattress; that aside from the tests the exhibits had remained unchanged while in his custody.

Defendant testified that the carboard carton had been in his office from prior to April 15, 1955, until May 31, 1955, when it was picked up by the police; that on April 15 and prior thereto hand towels, which he had brought from his home after they were laundered, had been kept in this carton; that the three towels submitted in evidence, upon which his name had been stamped by his laundry, had come from such carton and that he had furnished the same; that some of the towels that were picked up by the police on May 31, 1955, could have been in his office as much as six weeks prior thereto; and that it was possible that they might have been in the box on April 15, 1955. He did not deny that the mattress had come from his office nor did he offer any explanation as to the need for it there.

The three towels upon which defendant's name had been stamped by his laundry and upon which the semen stains were found, the mattress, and the carton were received in evidence over defendant's objection that the foundation therefor was insufficient in that no showing had been made that the towels used April 15, 1955, and the mattress and towels used May 4, 1955, were the same or in the same condition as those picked up May 31, 1955, or that they had been in defendant's exclusive custody during that period of time. The

testimony of Anthony Longhetti as to the semen stains on the mattress, submitted prior to defendant's testimony, was stricken as having insufficient foundation at the time it was submitted. His testimony with respect to the semen stains on the towels, which was submitted after defendant's admissions with respect to such towels, was permitted to stand.

Defendant denied having relations with either Robert or Terrence and denied that he had ever given them money or changed a $100 bill for them. He admitted knowing Leschefske and testified that the boys had called at his office during the afternoon of April 15, 1955, and talked to his secretary about insurance; that at the time in their presence he was in the act of cleaning his venetian blinds with some rags which he kept in the cardboard carton in his storeroom; that after he had finished cleaning, he had thrown the rags back into such carton and that Robert and Terrence had seen him do this; that they had called upon him again on April 18, 1955, during the noon hour in the absence of his secretary and had then told him that they had heard from Leschefske that he would "give them money to be a pervert" and that if he didn't give them money they would blackmail him and tell the police, and that he had told them to "get * * * out"; that again during the noon hour of April 22, 1955, in the absence of his secretary, they had come to his office and again made threats to expose him if he did not give them money; that he had then told them "you go to the police, and I will be there"; that on the evening of April 28, 1955, they had come to his home, and that he had then told them he would call the police if they did not leave; that on about May 6, 1955, Terrence had called upon him and asked him to break a $100 bill; that he had then told Terrence that it looked like the money had been stolen and that he had refused to change the bill for him.

He submitted evidence that he had left Austin around noon April 5, 1955, and had not returned there until April 8, 1955.

In its instructions to the jury, the trial court charged that Robert was an accomplice. It denied defendant's request that it charge the

jury likewise with reference to Terrence and in this respect instructed the jury that:

"There is testimony of Terrence * * * relating in some respects to events testified to by Robert * * * as occurring on April 15th, 1955. * * * The testimony of Terrence * * * may not be considered by you as corroboration of the testimony of Robert * * * if he, Terrence * * * also was an accomplice of the defendant * * *. To make a witness an accomplice, it must appear that a crime has been committed, that the person on trial committed the crime, and that the witness cooperated with, aided, or assisted the person on trial in the commission of the crime as a principal. Now, the Statute has defined who a principal is * * * and that is this: 'Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission and whether present or absent, and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal * * *.'

"* * * Now, if you find that Terrence * * * within the rules I have given you was also an accomplice of the defendant in the commission of the offense, then you cannot convict the defendant of the offense unless the testimony of both Robert * * * and that of Terrence * * * has been corroborated by other evidence as tends to convict the defendant of the commission of the offense * * *."

■ We are of the opinion that the evidence compelled an instruction that Terrence was an accomplice in the offense for which defendant was convicted. Under M. S. A. 610.12 any person, whether present or absent, who directly or indirectly counsels, encourages, induces, or aids another to commit a crime, is a principal therein. It is undisputed that Terrence counseled, encouraged, aided, and induced Robert and defendant to commit the offense of April 15, 1955, and that it was to be a "joint enterprise" of Robert and Terrence for money which they were to share equally.

Where the facts are undisputed and capable of but one inference with respect to the participation of a witness in the crime for which an accused is on trial, it is for the court to determine whether such

witness is an accomplice. State v. Elsberg, 209 Minn. 167, 295 N. W. 913; State v. Farris, 189 Iowa 505, 178 N. W. 361. Conversely, only where evidence tending to connect a witness with the crime is disputed or susceptible of different interpretations does the question of the complicity of the witness become one of fact for the jury. State v. Panetti, 203 Minn. 150, 280 N. W. 181; 22 C. J. S., Criminal Law, § 797; State v. Start, 65 Ore. 178, 132 P. 512, 46 L.R.A. (N.S.) 266. In State v. Farris, *supra,* in a somewhat analogous situation, in holding a witness to be an accomplice as a matter of law, the court stated (189 Iowa 510, 178 N. W. 363):

"* * * we think Barnes could properly be said to have been concerned or associated with Stevens in the Stevens act. There was preconcerted action between them before going to defendant's room; they were going together for that purpose; and their claim is that defendant was to pay them money for the privilege of committing the act, and that Barnes was to receive the money, or share in it."

Under the above principles, the trial court here should have instructed the jury that within the statutory definition of § 610.12 both Terrence and Robert were accomplices of defendant in the commission of the offense of April 15, 1955, so that before defendant's guilt could be determined, other evidence in corroboration of their testimony was required.

■ We do not agree with defendant's contention that such corroborative evidence was lacking. As expressed in State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1, § 634.04 is satisfied if the corroborative evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and to point to the guilt of the defendant. Thereunder, physical objects connected with the commission of the offense may constitute such corroboration if they have some relevancy and materiality to the crime charged. See, People v. McNamara, 103 Cal. App. (2d) 729, 230 P. (2d) 411; People v. Channell, 107 Cal. App. (2d) 192, 236 P. (2d) 654. Thus here the towels and the mattress in conjunction with the testimony of the witness Longhetti with reference to the semen stains thereon, and the carboard carton in which the towels were kept, could be

found sufficiently corroborative of the testimony of the accomplices with reference thereto to sustain the jury's verdict as to defendant's guilt.

■ Defendant asserts that the reception of the towels and mattress in evidence constituted error in that it was not shown that they had any connection with the crime charged or that they were in substantially the same condition when taken by the police as they were the date the described offenses were alleged to have been committed. The mattress was identified by Terrence in connection with an offense between him and defendant, taking place May 4, 1955. Without objection he was questioned with reference to this offense, and in connection therewith, identified the mattress. Robert also had seen it on this occasion when he arrived at defendant's office, and he likewise identified it at the trial.

While it was not shown to have had any connection with the offense of April 15, 1955, it was within the discretion of the trial court to permit Terrence and Robert to testify as to the offense of May 4, 1955. As indicated above, Terrence, Robert, and defendant were principals and accomplices in the offense of April 15, 1955. In cases involving sex offenses, evidence of other acts of a similar nature between the principals involved in the offense charged may, in the trial court's discretion, be admitted on the theory that such evidence tends to characterize the conduct and disposition of defendant toward such participants. State v. Shtemme, 133 Minn. 184, 158 N. W. 48; State v. Roby, 128 Minn. 187, 150 N. W. 793; State v. Schueller, 120 Minn. 26, 138 N. W. 937.

Testimony with reference to the offense of May 4, 1955, being admissible under the foregoing principles, it would follow that evidence of physical objects used therein, such as the mattress, likewise became admissible in the trial court's discretion. Of course, the duty rested upon it to weigh the value of its admission as against the risk that its reception in evidence might create the danger of undue prejudice, or might confuse the issue, or might unfairly surprise defendant when he did not have reasonable grounds to anticipate that it would be offered. Here there is nothing to show that such factors were not

given consideration by the trial court or to otherwise indicate that it abused its discretion in receiving such evidence.

■ It is also clear that there was adequate foundation for the admission of such evidence. It is undisputed that all of the exhibits were picked up by the police on May 31, 1955, in defendant's office in the location in which the accomplices testified they would be found. It is not disputed that, except for the tests made by the State Crime Bureau, all such exhibits were in the same condition at the trial as when found in defendant's office. Defendant admitted that the cardboard carton with towels therein was in his office storeroom on April 15, 1955; that it had remained there until it was picked up with the towels therein on May 31, 1955. He admitted further that his laundry mark was on the three towels submitted in evidence and that such towels had been furnished by him for his office; that they could have been in his office for as much as six weeks prior to May 31, 1955; and that they could have been in the carton on April 15, 1955. While Robert did not positively identify these three exhibits as being the three towels used, he did testify that they were similar in appearance and design to those used on April 15, 1955. There is a permissible presumption that, unless the contrary is shown, a state of things continues to exist as once established or at least until a different presumption may be reached because of the nature of the subject in question. Hansen-Peterson Co. v. Atchison, T. & S. F. Ry. Co. 165 Minn. 43, 205 N. W. 605. There is nothing to show that anyone outside of the accomplices and defendant had made any use of these exhibits during the time they were in defendant's office or that anything had been done to them which would change their condition during this period. Up to the time they were taken by the police on May 31, 1955, they had been under defendant's control, and while others had access to his office, there was nothing to show that any of such persons had knowledge of the exhibits or had made any use thereof. It is clear that the foundation for the admission of these exhibits was sufficiently established by the evidence outlined above and that their reception in evidence could, if the jury so determined, provide the corroboration to the testimony of Robert

and Terrence required under § 634.04. However, based upon our conclusion as set forth in section one above, a new trial must be granted because of the trial court's failure to instruct the jury that Terrence was an accomplice in the commission of the offense of April 15, 1955.

Reversed and new trial granted.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.