**STATE of Minnesota, Respondent,**

v.

**David Paul SHOOP, Appellant.**

**No. C2–87–2209.**

Court of Appeals of Minnesota.

Sept. 20, 1988.

Review Granted Nov. 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Nancy A. Evans, Mower Co. Atty., Austin, for respondent.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by FOLEY, P.J., and LANSING and SCHUMACHER, JJ., without oral argument.

## OPINION

FOLEY, Judge.

Appellant David Paul Shoop was convicted of second degree murder under Minn. Stat. §§ 609.19(1) and 609.05 (1986). At trial, appellant's counsel requested a jury instruction on corroboration of accomplice testimony. The trial court refused the proposed instruction without stating reasons. We remand for a new trial.

## FACTS

On the night of October 22–23, 1986, 24-year-old Timothy Hummel was murdered in a field outside of Austin, Minnesota. Hummel was shot three times, the final shot delivered at close range behind the left ear while he lay unconscious. Brad Newman and appellant were charged with the murder. Newman's case was recently before this court, see State v. Newman, C8–87–2344 slip op. (Minn.Ct.App. June 7, 1988) [available on WESTLAW, 1988 WL 56341]. Newman pleaded guilty to second degree murder, and at sentencing the trial court found that Newman had "aided and abetted Shoop during and after the murder." Appellant's case arises from an appeal of a conviction for second degree murder under Minn.Stat. §§ 609.19(1), 609.05 (1986).

Newman and appellant were friends who worked together in Austin. Appellant and Newman both knew Hummel. The evidence presented demonstrated that neither Newman nor appellant especially liked Hummel. In the past, each had disagreements with Hummel.

On several occasions, Newman was seen or heard discussing Hummel's death. On several of these occasions appellant was present. Each plan discussed was similar to the manner in which Hummel actually died—namely, befriending Hummel, getting him drunk and then killing him.

On the night of the murder, appellant and Newman were seen by several people to be driving around with Hummel. Appellant, Newman and Hummel spent the evening smoking marijuana and drinking at various bars. After closing time, the three drove towards Newman's girlfriend's house. When they saw that no lights were on, they drove down a gravel road. Newman lost control of his car and slid into a ditch. Unable to extricate the car, the three of them started walking towards Newman's house.

Newman testified at appellant's trial. According to Newman, the three started walking down some railroad tracks towards Newman's house. Newman testified that appellant went back to the car to get his

cigarettes. While crossing a field toward his house, Newman testified he heard a gunshot, turned around, and saw Hummel on his knees bleeding. After the gunshot, Newman ran to his house, got his pickup and returned to his car. When he got there, he called for appellant and Hummel but received no answer. Newman then returned to his house, where he saw appellant. Newman testified that when he asked appellant if he really shot Hummel, appellant replied "yes."

Newman testified that he helped appellant clean up and dispose of the body after the shooting. Newman and appellant took the body to an abandoned farm nearby and placed the body in a covered cistern.

The next day when Newman saw police cars at the scene of the shooting, he and appellant fled together. They dumped the gun and some bloodied clothing into a small creek near Lyle, Minnesota. From there they headed north towards the Twin Cities to visit friends.

Newman testified that he and appellant decided to return to Austin via back roads but got stuck near Faribault. They hitch-hiked for a couple of days and eventually were picked up by police and driven to Owatonna.

At trial, the trial court refused to give a requested instruction regarding the requirement of corroboration of accomplice testimony. The jury convicted appellant of second degree murder under Minn.Stat. §§ 609.19(1) and 609.05.

## ISSUE

Did the trial court err by refusing to instruct the jury that a conviction cannot be had upon accomplice testimony unless it is corroborated by other evidence?

1. Appellant requested the following instruction:
   You cannot find Defendant guilty of a crime on the testimony of a person who has been charged with that crime, unless that testimony is corroborated by other evidence which tends to convict Defendant of the crime. Such a person who is charged for the same crime is called an accomplice.

## ANALYSIS

Generally, the issuance of a requested jury instruction lies in the discretion of the trial court. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). In review, the jury instructions must be viewed as a whole. *State v. Mosley*, 414 N.W.2d 461, 465 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987).

Minn.Stat. § 634.04 (1986) specifies the need for corroborating evidence when an accomplice testifies. Specifically, the statute provides:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Naturally, this statute is based on the inherent distrust an accomplice's testimony evinces. *See State v. Soltau*, 212 Minn. 20, 2 N.W.2d 155, 159 (1942). Thus, "trial judges are under the duty of giving a cautionary instruction concerning the weight of the testimony of accomplices." *State ex rel. Jeffrey v. Tessmer*, 211 Minn. 55, 56, 300 N.W. 7, 7–8 (1941).

Although required to be given, the failure to give an instruction on corroboration is not reversible error where no such charge was requested. *See Soltau*, 212 Minn. at 26, 2 N.W.2d at 158–59. *See also Cole v. State*, 289 Minn. 503, 505, 183 N.W. 2d 290, 292 (1971).

In the present case, however, appellant did request such an instruction. Although appellant's proposed instruction on corroboration varied somewhat from the standard instruction, the presence of Newman's testimony mandated that *some* instruction be given.[1] *See* 10 *Minnesota Practice*, CRIM.JIG 3.18 (1985).

In this case Bradly Newman is a person who is charged with the same crime as Defendant. You cannot find Defendant guilty of a crime on his testimony unless that testimony is corroborated.
   The evidence that can corroborate the testimony of an accomplice must in some substantial degree confirm the truth of the accom-

■ We have carefully reviewed the trial court's instructions in this case, and there is no language which could be considered the equivalent of a statement of the law of accomplice testimony. The trial court's failure to so instruct was fundamental error requiring a new trial. *See State v. Hopfe,* 249 Minn. 464, 475, 82 N.W.2d 681, 687–88 (1957).

The mandate of jury instruction under Minn.Stat. § 634.04 (1986) exists to protect the defendant from conviction based on the testimony of a witness who is naturally inclined to shift, diffuse or avoid criminal responsibility. *State v. Mathiasen,* 267 Minn. 393, 399, 127 N.W.2d 534, 539 (1964). Absent direction by the legislature or the supreme court, we decline to ignore this protective instruction. *Id.*

■ We are cited to no case that permits us to ignore fundamental error. The trial court's refusal to instruct does not come within its discretion. Given Newman's participation, a proper instruction on the law of accomplice testimony was mandated. The failure to give *any* instruction in this area, especially in the face of a written request, is fundamental error compelling the granting of a new trial.[2]

■ The state argues that no corroboration instruction was necessary, since Newman was not an accomplice. They argue that Newman was a "hostile witness, co-equally responsible" for the victim's murder. We are not persuaded. An accomplice is one who has been or could be convicted of the same offense with which defendant has been charged. *State v. Houle,* 257 N.W.2d 320, 324 (Minn.1977). It is an inescapable conclusion after a total review of the evidence, that Newman was an accomplice. Also, the fact that Newman pled guilty to the same crime that appellant was charged with compels the finding that Newman was an accomplice.

We are mindful of the recent decision of the Minnesota Supreme Court in *State v. Shamp,* 427 N.W.2d 228 (Minn.1988), where the court applied the harmless error doctrine in reversing the court of appeals and reinstating a conviction. Here, as in *Shamp,* evidence of guilt is strong (undoubtedly influenced by the testimony of Newman, the accomplice), but in the case at bar there was a written demand for a cautionary instruction on the law of accomplice testimony, which was denied. The accomplice instruction was a necessary and integral part of the jury's evaluation of the

plice's testimony and point to the guilt of the Defendant beyond a reasonable doubt.

You must bear in mind that the testimony of an accomplice is considered inherently untrustworthy.

The standard instruction on accomplice testimony provides:

You cannot find defendant guilty of a crime on the testimony of a person who could be charged with that crime, unless that testimony is corroborated by other evidence which tends to convict defendant of the crime. Such a person who could be charged for the same crime is called an accomplice.

In this case Newman is a person who could be charged with the same crime as defendant. You cannot find defendant guilty of a crime on his testimony unless that testimony is corroborated.

If you find that Newman is a person who could be charged with the same crime as defendant, you cannot find defendant guilty of a crime on his testimony unless that testimony is corroborated.

The evidence that can corroborate the testimony of an accomplice must do more than merely show that a crime was committed or

show the circumstances of the crime, but the corroborating evidence need not convince you by itself that defendant committed the crime. It is enough that it tends to show that defendant committed a crime and that taken with the testimony of an accomplice you are convinced beyond a reasonable doubt that defendant committed the crime.

(Irrelevant portions omitted). The pattern instruction appears to be sufficient. *See State v. Harris,* 405 N.W.2d 224, 231 (Minn.1987).

2. The grant of a new trial is the appropriate measure when fundamental error has occurred. This is especially true when the fundamental error involves a requested jury instruction relative to the standard of proof. *See Becker v. Alloy Hardfacing & Engineering Co.,* 401 N.W.2d 655, 661 (Minn.1987) (new trial granted in civil case where trial court failed to give requested instruction on standard of proof of punitive damages); *see also State Bank of Hamburg v. Stoeckmann,* 417 N.W.2d 113, 116 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Feb. 17, 1988) (errors in jury instructions are fundamental if they destroy substantial correctness of charge, cause miscarriage of justice or result in substantial prejudice).

evidence, and a proper verdict could not be reached without it.

We distinguish *Shamp*, where there was no request for a cautionary instruction. In *Shamp*, the supreme court said:

> Defendant, by conceding that the applicable statute of limitations was 7 years and by not requesting a cautionary instruction at the proper time, is deemed to have forfeited his right to complain about the trial court's failure to caution the jury about the conduct on which it could base a conviction. Under the plain error rule, defendant could obtain relief from the trial court's failure to give such a cautionary instruction only if the trial court's failure seriously affected substantial rights and only if the error was prejudicial error. *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988).

The Minnesota Supreme Court has held it to be reversible error where the law of accomplice testimony is involved and appropriate instructions were not given. *See Hopfe*, 249 Minn. at 475, 82 N.W.2d at 687–88. In *State v. Parker*, 417 N.W.2d 643 (Minn.1988), the supreme court references a number of cases where no curative instruction was requested and the harmless error rule was applied. *See State v. Sutherlin*, 396 N.W.2d 238, 241 (Minn.1986); *State v. Coleman*, 373 N.W.2d 777, 782–83 (Minn.1985); *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). However, the case at bar involves a written request for an instruction which the trial court denied. In this situation, we are not free to label the trial court's refusal to grant the requested instruction as harmless error. *See Caron*, 300 Minn. at 127, 218 N.W.2d at 200 (where the court held "defendant's failure to object or to request curative instructions weighs heavily in our decision"). Under the established precedents, where the law of accomplice is involved, we hold the harmless error analysis does not apply.

Appellant's motion to strike footnote 4 on page 35 of respondent's brief is granted.

## DECISION

The failure to give a requested instruction on the corroboration of accomplice testimony was fundamental error requiring a new trial. We remand for a new trial.

REMANDED.

SCHUMACHER, J., dissents.

SCHUMACHER, Judge (dissenting).

I respectfully dissent. Considering the overwhelming evidence of guilt, independent of the testimony of Newman, the refusal to give the requested jury instruction was within the sound discretion of the trial court. I would affirm.

At trial, the prosecution presented sufficient independent evidence establishing the guilt of Shoop. Newman and Shoop were seen together the night of the murder, including shortly after it occurred. There is evidence that Shoop and Newman discussed Hummel's murder several times prior to Hummel's death. Further, each of these discussions involved events similar to how Hummel actually died. There were boot prints near the scene of the crime similar to those Shoop owned. Shoop's fingerprints and palm prints were found on the pickup truck used to dispose of Hummel's body. Shoop's shirt, similar to one he wore on the night of the murder, was found a few feet away from the murder weapon in a creek. Shoop and Newman fled from the Austin area when the investigation began. And finally, Rick Ferguson testified that when Newman stated that Shoop "did it," Shoop nodded in affirmation.

To sustain a conviction, the independent, corroborating evidence may be circumstantial in nature. *State v. Star*, 248 Minn. 571, 576, 81 N.W.2d 94, 98 (1957). The evidence presented, independent of Newman's testimony, was certainly more than sufficient.

As noted by the majority, the issuance of requested jury instructions lies in the sound discretion of the trial court. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). The trial court is in the best position to consider the necessity of any given instruction. In light of the considerable independent evidence of guilt presented to the

jury, the trial court was within its discretion in refusing to give the instruction.

Although the trial court may have been on the safe side to give the cautionary instruction, nevertheless, the failure to give the instruction was not reversible error where ample corroboration existed. *See Cole v. State*, 289 Minn. 503, 183 N.W.2d 290 (1971), (the failure to give a cautionary instruction on corroboration was not reversible error where ample corroboration existed and where the jury instruction was not requested.)

It is true that the present case goes one step further than *Cole*, namely, that a cautionary instruction was requested and denied. Yet, it is clear from the record that defendant received a fair trial and was not denied any fundamental rights. *See Cole*, 183 N.W.2d at 292.

For the foregoing reasons, I would affirm the conviction.