**STATE of Minnesota, Respondent,**

v.

**David Paul SHOOP, Appellant.**

**No. C2–87–2209.**

Supreme Court of Minnesota.

June 2, 1989.

Rehearing Denied July 6, 1989.

476

C. Paul Jones, State Public Defender, Marie Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, and Nancy A. Evans, Mower County Atty., Austin, for respondent.

COYNE, Justice.

By majority decision, the court of appeals reversed the second-degree intentional murder conviction of David Shoop and granted him a new trial. *State v. Shoop*, 429 N.W.2d 259 (Minn.App.1988). It ruled that the trial court erred in denying a request to instruct the jury on the accomplice corroboration requirement and that because the harmless error doctrine has no application, the error required a new trial without regard to the total evidence adduced at trial. *Shoop*, 429 N.W.2d at 261–63. Although we agree that the trial court erred in denying the defense request, we hold that the harmless error doctrine is applicable and that here the error was harmless. We also decide those issues not addressed by the court of appeals. The decision of the court of appeals is reversed and the judgment of conviction is reinstated.

The murder occurred early on Thursday, October 23, 1986, in a farm field near Austin. On the afternoon of the 23rd, a retired farmer living in a trailer home next to the field discovered blood splattered on the trailer, a pool of blood, a tennis shoe, and an area of matted grass. He called the sheriff and, that night and during the next day, the sheriff and a team of experts from the Bureau of Criminal Apprehension investigated the scene.

It soon became apparent that 24–year-old Timothy Hummel was missing and that defendant and his best friend, Brad Newman, the last people seen with the decedent, had left town. Defendant and Newman were arrested near Owatonna on Monday, the 27th.

Newman, age 19, led authorities to the abandoned farm where Hummel's body was found and provided two incriminating statements, one shortly after his arrest and another 1½ months later. Both defendant and Newman were indicted on a charge of aiding and abetting each other in the commission of first-degree premeditated murder. Defendant was tried first and the state obtained an order from the court requiring Newman to testify as a hostile witness by granting him use immunity.

According to Newman, he and defendant had talked in the presence of others about killing Hummel. Newman testified that on the evening of Wednesday, October 22, they drove around in Newman's car with Hummel and Jody Meyer, a mutual friend, drinking beer and smoking marijuana. After taking Meyer to her home, Newman and defendant went bar-hopping with Hummel, leaving the last bar around closing time. Newman drove his car into a ditch and the three men began walking across a field. Defendant returned to the automobile ostensibly to get cigarettes, but in fact to retrieve Newman's loaded .22 caliber revolver. As he approached the other men, defendant fired a shot at Hummel's head from a distance. When Hummel announced that he was bleeding badly and asked defendant what he had done, Newman began to run, stating that he would get his truck from his mother's home located ½ mile away. He did so and tried unsuccessfully to pull his car from the ditch with the truck. He thereafter helped the defendant clean up and change clothes, and together they made another unsuccessful attempt to extricate the car. They then dragged Hummel's body from a spot near the trailer to the road, threw him in the back of the truck and drove him to the abandoned farm. Together they lifted him into a cream cooler and secured the top by placing a washing machine upon its lid. A tow truck operator later assisted them in pulling the car from the ditch.

Defendant and Newman disposed of defendant's bloody shirt and the murder weapon in a creek near the Iowa border and agreed both to return to work on Thursday and to respond to any inquiries

with a statement that Hummel had left the bar with someone whom they had never seen before. After observing the BCA officers investigating the scene, they decided to flee, taking a zig-zag path to the Twin Cities home of a mutual friend, Rick Ferguson. They told Ferguson they were in deep trouble and intended to flee to Canada, but he advised them to return to Austin and turn themselves in. On the return trip to Austin, the car broke down. While Newman and defendant were walking along the highway, they were arrested.

After this detailed examination of Newman, the state called a large number of witnesses whose testimony not only independently connected defendant to the killing, but also corroborated Newman's testimony connecting defendant to the killing. The defendant did not testify but instead called a number of character witnesses whose cumulative testimony indicated that he is a nice young man who, in their experience, is passive, mild-tempered and nonaggressive.

The jury acquitted defendant of first-degree premeditated murder but found him guilty of second-degree intentional murder. The presumptive sentence for the offense at the time was 120 (116–124) months but is now 216 (212–220) months. The trial court doubled the 124–month maximum presumptive sentence and imposed a term of 248 months.[1]

The split decision of the court of appeals dealt with but one of the multiple issues raised by the defendant, namely, whether the trial court erred in denying his request for an instruction on accomplice testimony. As indicated, the majority held that it was prejudicial error requiring a new trial, *Shoop,* 429 N.W.2d at 262–63, while the dissent concluded that the trial court did not err, but that if it did, it was a harmless error. *Id.* at 263–64.

We first note that the accomplice corroboration requirement derives not from the constitution but from legislation, specifically, Minn.Stat. § 634.04 (1988), which provides as follows:

> A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

This statutory requirement has existed in virtually the same form since territorial days. See Minn.Rev.Stat. (Terr.), ch. 132, § 242 (1851). Statutes of this nature represent a departure from the general common law requirement that the factfinder base its resolution of factual disputes on the quality, not the quantity, of witnesses. *Weiler v. United States,* 323 U.S. 606, 608, 65 S.Ct. 548, 549, 89 L.Ed. 495 (1945) ("Triers of fact in our fact-finding tribunals are, with rare exceptions, free in the exercise of their honest judgment to prefer the testimony of a single witness to that of many").

As a rule, the court has the primary authority under the separation of powers doctrine to regulate evidentiary matters, *State v. Burns,* 394 N.W.2d 495, 498 (Minn. 1986); the legislature is exclusively empowered "to define by statute what acts shall constitute a crime and to establish sanctions for their commission." *State v. Soto,* 378 N.W.2d 625, 627 (Minn.1985). That it has decreed that a conviction may not rest on the uncorroborated testimony of an accomplice is a matter within its province and for our enforcement. *State v. Panetti,* 203 Minn. 150, 154, 280 N.W. 181, 182 (1938).[2]

---

1. After defendant was convicted, Newman entered a plea to second-degree murder pursuant to *State v. Carriere,* 290 N.W.2d 618 (Minn. 1980), thereby agreeing that the state's evidence would be sufficient to convict him of second-degree murder if the case went to trial. His identical 248–month sentence was affirmed on appeal in *State v. Newman,* C8–87–2344, (Minn. App. filed June 7, 1988) (unpublished opinion, 1988 W.L. 56341), *pet. for rev. denied* (Minn., July 28, 1988).

2. While we cannot disregard a statute imposing a corroboration requirement in criminal matters, we are free even in the absence of such a statute to nevertheless require corroboration. Thus, while the uncorroborated identification testimony of a single eyewitness to a crime ordinarily is sufficient to support the jury's determination that a defendant committed the crime, "we have recognized that not all single eyewitness cases are the same and have empha-

In a practical sense, the legislation embodies the common law's long-standing mistrust of the testimony of the accomplice. The accomplice may testify against another in the hope of or upon a promise of immunity or clemency or to satisfy other self-serving or malicious motives. Comment, *Accomplice Corroboration—Its Status in California,* 9 U.C.L.A.L.Rev. 190, 192–93 (1962). While the solution of the common law was to caution jurors about accomplice testimony, 7 J. Wigmore, *Evidence* § 2056 (Chadbourn Rev. ed. 1978), the legislature expanded the protection by enacting the statutory corroboration requirement.

■ On first reading, one might conclude that the statute would be satisfied if the appellate court, as part of its review of the sufficiency of the evidence to convict, were to scrutinize the record carefully to determine whether the testimony of the accomplice was sufficiently corroborated. However, for good reason, the statute contemplates more, namely, that the trial judge submit to the jury the question of whether the corroborative evidence is trustworthy by an assessment of the credibility of the corroborative testimony. "[T]o permit the judge finally to pass upon this question would enable a jury to convict on the evidence of a single witness, even though it believed, contrary to the belief of the trial judge, that the corroborative testimony was wholly untrustworthy." *Weiler,* 323 U.S. at 610–11, 65 S.Ct. at 551 (discussing analogous rule barring a federal perjury conviction upon the uncorroborated testimony of single witness). Such a result would be inconsistent with the purpose of the rule. *Id.*

■ Here, the defendant asked the trial judge to give an instruction on accomplice testimony similar to CRIMJIG 3.18. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice, CRIMJIG* 3.18 (2d ed. 1985). While such an instruction need not be given in every criminal case, it must be given in any criminal case in which any witness against the defendant might reasonably be considered an accomplice to the crime. If it is unclear whether or not a witness is an accomplice to the crime, the jury should make that determination, and if it is clear as a matter of law that a witness is an accomplice, then the trial court must so inform the jury.

■ Ordinarily a criminal defendant must either request an accomplice instruction or object to the lack of one if he wishes to preserve the issue for appeal. *State v. Soltau,* 212 Minn. 20, 26, 2 N.W.2d 155, 159 (1942). Nevertheless, the trial court should give such an instruction in an appropriate case whether or not one is requested. *State v. LaJambe,* 300 Minn. 539, 541, 219 N.W.2d 917, 919 (1974). Here, Newman admittedly was an accomplice and defense counsel requested the requisite instruction. Accordingly, it is our view that the trial court erred in failing to so instruct the jury. The question which remains is whether the error is amenable to the harmless error analysis. In this regard, we disagree with the majority of the appellate court that concluded that it was not.

■ As a general rule, an automatic reversal for trial error is required only with respect to errors which "necessarily render a trial fundamentally unfair." *Rose .v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986).[3] However, most

sized that when the single witness' identification of a defendant is made after only fleeting or limited observation, corroboration is required if the conviction is to be sustained." *State v. Walker,* 310 N.W.2d 89, 90 (Minn.1981). Similarly, while the legislature has determined that the testimony of a complainant in a sexual assault prosecution need not be corroborated, Minn.Stat. § 609.347, subd. 1 (1988), we have held that there may be cases in which the testimony of the complainant is such that a reversal by this court may be necessary absent corrobo-

ration, *State v. Ani,* 257 N.W.2d 699, 700 (Minn. 1977).

**3.** Illustrative cases include: *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) (automatic award of new trial if trial court directs a verdict for prosecution in a criminal trial by jury); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of right to be represented by counsel); *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (use of coerced confession); *Tumey*

types of trial error are examined on application of the harmless error analysis.[4] In application of this analysis, a new trial is required if the error is deemed prejudicial, but is not required if the error is deemed harmless. *See, e.g., State v. Demmings,* 310 Minn. 152, 246 N.W.2d 31 (1976), where, although acknowledging that an erroneous instruction limiting a jury's consideration of evidence of defendant's good character might be harmless in another case, we awarded a new trial upon our conclusion that the error was prejudicial on the record submitted.

While courts have not always agreed that harmless error analysis is applicable to an erroneous refusal to instruct on accomplice testimony,[5] it is our view that it is. Significantly, neither the United States Supreme Court nor this court has applied the automatic reversal rule[6] to claimed errors of this nature. Indeed, a determination that it is prejudicial error which renders a trial fundamentally unfair would be inconsistent with those decisions in which we have held that the trial court's failure to give such an instruction *sua sponte* is not plain error requiring the award of a new trial. *Soltau,* 212 Minn. at 26, 2 N.W.2d at 159. Under the plain error doctrine a defendant may obtain relief from a trial error to which he did not object only if the error seriously affected a substantial right and was prejudicial. *State v. Parker,* 417 N.W.2d 643, 647 (Minn.1988). If the trial court's failure to give such an instruction *sua sponte* is not fundamental error, then it follows that neither is the refusal to give such a requested instruction fundamental error.

The next level of inquiry is whether the erroneous refusal to instruct is harmless. In this regard, a simple mechanical analysis

---

*v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (adjudication by biased judge); *State v. Wiplinger,* 343 N.W.2d 858 (Minn.1984) (defendant's attorney, over defendant's objection, impliedly admitted defendant's guilt to jury).

4. Illustrative cases of the United States Supreme Court holding that harmless error analysis applies include: *Coy v. Iowa,* —— U.S. ——, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988) (denial of defendant's right to face-to-face confrontation with complaining witness); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (erroneous burden-shifting instruction on malice); *United States v. Hasting,* 461 U.S. 499, 511–12, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983) (prosecutor's comment on defendant's failure to testify); *Hopper v. Evans,* 456 U.S. 605, 610–11, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982) (erroneous failure to give lesser included offense instruction); *Milton v. Wainwright,* 407 U.S. 371, 377–78, 92 S.Ct. 2174, 2177–78, 33 L.Ed.2d 1 (1972) (admitting confession obtained in violation of right to counsel); *Chambers v. Maroney,* 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of Fourth Amendment). Illustrative Minnesota cases include: *State v. Shamp,* 427 N.W.2d 228, 230–31 (Minn.1988) (erroneous failure to caution jury not to base verdict of guilt on conduct occurring outside period of statute of limitations); *State v. Robinson,* 427 N.W.2d 217, 224 (Minn.1988) (erroneous admission of in-custody statement given by accused after he had requested but been denied his constitutional right to counsel); *State v. Clobes,* 422 N.W.2d 252, 255 (Minn.1988) (prosecutor's failure to disclose evidence that might have been used to impeach key prosecu-

tion witness); *State v. Rean,* 421 N.W.2d 303, 307 (Minn.1988) (erroneous denial of jury requests for rereading of testimony); *State v. Parker,* 417 N.W.2d 643, 647–48 (Minn.1988) (prosecutor's improper comment in closing argument on defendant's failure to call certain witness).

5. The federal cases are collected at Annotation, *Necessity of, and Prejudicial Effect of Omitting, Cautionary Instruction to Jury as to Accomplice's Testimony Against Defendant in Federal Criminal Trial,* 17 A.L.R.Fed. 248, § 4 (1973).

6. Indeed, we note that the United States Supreme Court itself, in two cases involving the rule barring a federal perjury conviction upon the uncorroborated testimony of a single witness, held that harmless error analysis applies. In *Goins v. United States,* 306 U.S. 622, 59 S.Ct. 783, 83 L.Ed. 1027 (1939), the Court, in a per curiam decision, dismissed certiorari because it appeared on hearing that the district court's refusal to instruct on the corroboration requirement "could not have prejudiced the petitioner." Later, in *Weiler v. United States,* 323 U.S. 606, 611, 65 S.Ct. 548, 551, 89 L.Ed. 495 (1945), the Court, on facts distinguishable from those in *Goins,* concluded that refusal to instruct was prejudicial.

We note further that in *State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980), we held that harmless error analysis applies to a trial court's erroneous refusal to instruct the jury that a witness is an accomplice as a matter of law. *See also State v. Hayes,* 431 N.W.2d 533 (Minn. 1988), where we held harmless the trial court's erroneous instruction that those who acquiesce are guilty of aiding and abetting.

of the record to determine whether corroborating evidence was presented is not sufficient. For example, such an analysis may not disclose the possibility that a jury, in considering the credibility of the witnesses, may have rejected the corroborating evidence, leaving the testimony of the accomplice standing alone, uncorroborated. Instead, the focus must be upon the impact of the error on the verdict. If we were to assume that the harmless error test for *constitutional* error applies to serious errors of this nature, it is necessary to examine all relevant factors to determine whether, beyond a reasonable doubt, the error did not have a significant impact on the verdict. *State v. Forcier*, 420 N.W.2d 884, 887 (Minn.1988). If, after an analysis of the record and a consideration of all relevant factors, we conclude that the erroneous omission of the instruction might have prompted the jury, which is presumed to be reasonable, to reach a harsher verdict than it might have otherwise reached, defendant must be awarded a new trial. Alternatively, if we conclude beyond a reasonable doubt that the omission did not have a significant impact on the verdict, reversal is not warranted.

■ Here, the testimony of the accomplice was not given pursuant to any promise of leniency and, in fact, Newman testified against his will and only after being compelled to do so under a grant of use immunity.

The state's evidence—not that defendant shot the gun but that he intentionally participated in the killing—was overwhelming, consisting not just of the accomplice's testimony but also of both corroborating evidence and evidence independently connecting defendant to the crime. The record

included evidence of an extremely close association between defendant and Newman, of threats by both defendant and Newman to kill Hummel in the manner in which the crime occurred, of the motive of each actor and that Hummel was last seen with defendant and Newman before his death. There was evidence connecting both actors to the scene of the murder, to the disposal of the body, and to statements that Hummel had left the bar with an unidentified stranger. Moreover, the record documents the disposal of the gun, their joint flight to the Twin Cities, the adoptive admission by defendant to their mutual friend approximately 36 hours after the killing, and that they remained together until their arrest. At the same time, the defense was weak, consisting basically of character evidence of a few family members and friends that defendant is a nice person.[7]

Finally, the closing argument of the prosecutor not only conceded to the jury that Newman had an obvious interest in trying to minimize his guilt and point a finger of primary guilt at defendant, but focused the jury's attention on the evidence corroborating Newman's testimony.[8] At one point the prosecutor said, "[I]t isn't necessary * * * to accept everything that Brad Newman says at face value, but you can accept those parts of his story that are supported by other independent evidence. You can accept that and find that it is true."

Analysis of this record and a consideration of all relevant factors compel the conclusion that beyond a reasonable doubt the erroneous refusal to instruct on accomplice corroboration did not have a significant impact on the verdict in this case. On a different record in a different case, of

---

7. The defendant, of course, had no obligation to present any evidence. However, in harmless error impact analysis, the weight of the evidence is one factor that may be considered in determining whether the error had any impact on the verdict. *See, e.g., State v. Forcier*, 420 N.W.2d 884, 887 (Minn.1988).

8. Among the cases establishing that the arguments of counsel can be considered in harmless error impact analysis, *see Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2089, 60 L.Ed. 2d 640 (1979) (arguments of counsel bear on

determination whether trial court's erroneous refusal to give instruction on presumption of innocence requires new trial), and *State v. Fernow*, 354 N.W.2d 438, 439–40 (Minn.1984) (fact that prosecutor and defense counsel in closing arguments in theft prosecution made it clear that ownership of property was a separate issue for jury was one of the circumstances supporting conclusion that trial court's erroneous refusal to separate element of ownership from element of consent was not prejudicial).

course, we might conclude otherwise. Whenever the trial court determines as a matter of law that a witness is an accomplice to the crime or whenever there are facts which would permit a jury to find that a witness is an accomplice, the trial court should give the requisite instruction as a matter of course. *State v. LaJambe*, 300 Minn. 539, 541, 219 N.W.2d 917, 919 (1974).

In view of its decision that a new trial was required, the court of appeals did not address other issues raised on appeal, although by implication it must have rejected defendant's contention that the evidence was insufficient to corroborate the accomplice's testimony because had it been insufficient, defendant would have been entitled to an outright reversal of his conviction rather than a new trial. Our decision that the refusal to instruct was harmless error similarly reflects our rejection of defendant's contention that the evidence corroborating Newman's testimony was insufficient. Among our recent decisions dealing with the sufficiency of the evidence of corroboration, *see State v. Scruggs*, 421 N.W. 2d 707, 713–14 (Minn.1988).

■ Defendant then contends that the trial court erred in the reception of evidence of his adoptive admission. When defendant and Newman went to Ferguson's house in the Twin Cities, Newman stated, "I didn't do it, Dave did." The trial court allowed Ferguson to testify that he saw defendant nod his head affirmatively immediately after Newman's comment. Minn.R.Evid. 801(d)(2)(B) states: "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement of which he has manifested his adoption or belief in its truth. * * * " In *Village of New Hope v. Duplessie*, 304 Minn. 417, 425, 231 N.W.2d 548, 553 (1975), decided shortly before the promulgation of the Rules of Evidence, we held that the trial court erred in admitting evidence of a head nod as an adoptive admission because the record did not establish that the head motion constituted a positive and unequivocal adoption of the statement. However, we did acknowledge that some head nods might be admissible as adoptive admissions. *Id.* at n. 9. We have since relied upon the *Duplessie* analysis,[9] and here have no hesitancy to conclude that the trial court did not abuse its discretion in admitting the evidence. The record demonstrates Ferguson's positive and unequivocal testimony that he saw defendant affirm Newman's statement by nodding his head.

■ Defendant also asserts that the trial court erred in its instructions on aiding and abetting, Minn.Stat. § 609.05 (1988). The trial court instructed the jury as follows: "[I]n determining this issue [of aiding and abetting] or any other issue before you, you may consider all of the evidence presented to you whether it occurred prior to the murder and death or occurred after the murder and death in point of time." The defendant's claims that this was a misstatement of the law or that the trial court erred in giving the instruction after first deciding not to do so. Defendant's final contention is that the trial court was not justified in sentencing defendant to a 248–month term, double the maximum presumptive sentence. We reject both contentions.

Reversed and judgment of conviction reinstated.

WAHL and KEITH, JJ., dissent.

WAHL, Justice (dissenting).

The court of appeals and the majority opinion of this court properly hold that the trial court erred in denying defendant's request for an instruction on accomplice testimony. It is only from this court's conclusion that the error is amenable to the harmless error analysis that I respectfully dissent.

Newman was an accomplice as a matter of law, his complicity in the murder being undisputed. *State v. Hopfe*, 249 Minn. 464,

---

**9.** *See State v. Goodridge*, 352 N.W.2d 384, 387–88 (Minn.1984), and *State v. Morgan*, 296

N.W.2d 397, 401–02 (Minn.1980).

471–72, 82 N.W.2d 681, 686 (1957). The accomplice corroboration requirement, mandated by Minn.Stat. § 634.04 (1988), must be communicated to the jury to afford its intended protection against untrustworthy accomplice testimony. Shoop's written requested jury instruction requiring corroboration of Newman's testimony was denied by the trial court without discussion. The general instructions given do not state that no conviction may be had without corroboration as required by our cases. *State v. LaJambe*, 300 Minn. 539, 541, 219 N.W.2d 917, 919 (1974). In *Hopfe* this court granted a new trial because the trial court failed to give the accomplice corroboration instruction even though there was sufficient evidence of corroboration. Such a result is required in this case. *State v. Adams*, 295 N.W.2d 527 (Minn. 1980) was a step in the wrong direction. When we begin to cut corners, the quality of justice is strained. Will we find harmless error when the court fails to instruct on the presumption of innocence?

I would affirm the court of appeals. The failure to give a jury instruction on the requirement of an accomplice's testimony, where such an instruction was requested, is fundamental error requiring a new trial. *State v. Shoop*, 429 N.W.2d 259, 263 (Minn. App.1988).

KEITH, Justice.

I join in the dissent of WAHL, J.