**STATE of Minnesota, Respondent,**

v.

**Ray Anthony WILLIAMS, Appellant.**

**No. A07–2079.**

Court of Appeals of Minnesota.

Jan. 20, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and David J. Hauser, Otter Tail County Attorney, Michelle M. Eldien, Assistant County Attorney, Fergus Falls, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Bradford S. Delapena, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.*

## OPINION

LARKIN, Judge.

Appellant challenges his conviction of first-degree arson. Appellant argues that the district court erred by failing to instruct the jury, sua sponte, regarding the relevant accomplice liability law after instructing the jury that it could find appellant guilty if he, or another for whose acts he is liable, caused the fire. Because the omission of any instruction regarding accomplice liability law was plain error that affected appellant's substantial rights and compromised the integrity of the judicial proceedings, we reverse and remand for a new trial.

## FACTS

Appellant Ray Anthony Williams's conviction stems from a fire that destroyed the home that he shared with his wife and 14–year–old stepson, J.C., in Elizabeth. On Tuesday, September 19, 2006, at 5:58 a.m., appellant's neighbor called 911 to report a fire at appellant's residence. Firefighters arrived at the scene approximately ten minutes later. Because the dispatcher had indicated that someone was inside the house, the firefighters broke into the house and conducted a room-to-room search, but found no one.

Deputy State Fire Marshall John Steinbach was responsible for determining the origin and cause of the fire. Steinbach determined that an ignitable liquid had been poured throughout much of the first floor in a path from the living room to the exterior kitchen door. Based on the lingering smell of gasoline and the irregular pour pattern along the floor, Steinbach determined that the fire had been intentionally set. He collected samples from the most heavily damaged areas of the home and sent them to the Bureau of Criminal Apprehension for chemical analysis. Four of the six samples contained residue consistent with gasoline. In addition, an empty gasoline can was found under some debris in the kitchen.

* Retired judge of the district court, serving as a judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

At approximately 8:30 a.m. on the morning of the fire, J.C. was found sleeping in his mother's car in the driveway of his grandmother's Fergus Falls residence. J.C. was taken into custody for questioning. J.C. told the police that his mother dropped him off at appellant's home the night before the fire and then she went to Fergus Falls to spend the night with J.C.'s grandmother. J.C. told police that at approximately 11:00 p.m., he found a key to the family car, left appellant's home, and began walking to town. J.C. said that he hitchhiked to Fergus Falls and then spent the night sleeping in the family car, outside of his grandmother's home. The interviewing officer told J.C. that he did not believe J.C.'s story. J.C. denied that he had been around gasoline, and he denied starting the fire. The police seized J.C.'s clothing for chemical testing. The test results revealed the presence of gasoline residue on J.C.'s jacket and t-shirt.

At approximately 3:00 p.m. on the day of the fire, the manager of a local gas station, who had heard that the police were looking for appellant, contacted the police and told them that appellant had been at the gas station that morning. The manager informed the police that appellant wanted to purchase gasoline but had no money. Appellant offered to leave his driver's license as collateral for later payment. The cashier authorized the transaction and retained appellant's license. Appellant did not return to pay for the gasoline. The manager gave the police appellant's driver's license and two surveillance videotapes. One tape showed appellant inside the station. The other showed appellant's car parked at a gas pump with an unidentified male standing next to it. The videotapes indicate that appellant was at the gas station from 5:59 to 6:03 a.m.

Three days after the fire, J.C. asked to speak with the police a second time. J.C. told the police that his initial statement was not true. J.C. provided a second statement, this time reporting that he had slept alone at appellant's house the night before the fire. J.C. stated that appellant woke him at approximately 5:00 a.m. and drove him to his grandmother's house in Fergus Falls at about 5:45 a.m., where J.C. went to sleep in the family car.

On the same day that J.C. provided his second statement to the police, appellant turned himself in to the authorities. The police impounded appellant's vehicle, searched it, and found an empty gasoline can in the trunk. The state charged appellant with one count of first-degree arson. The state did not charge appellant with aiding and abetting first-degree arson.

At trial, only two witnesses testified regarding what happened at appellant's home during the early morning hours of September 19, 2006: J.C. and appellant. J.C.'s trial testimony was consistent with his second statement to the police. J.C. testified that appellant woke him on the morning of the fire at approximately 5:00 a.m. J.C. said he was surprised to see appellant, who had been in Minneapolis. Appellant told J.C. to get dressed because appellant was taking him to his grandmother's home. J.C. and appellant left the house together at approximately 5:30 a.m. and drove to Fergus Falls. J.C. estimated that appellant dropped him off in front of his grandmother's house at approximately 5:45 a.m. J.C. said he decided to sleep in his mother's vehicle, which was parked outside of the residence. J.C. acknowledged that he spoke with appellant by telephone many times between his first and second statements to the police.

Appellant testified that he left his home in Elizabeth on the Thursday before the fire, bound for the Twin Cities to find work and to locate a couple who had expressed

interest in buying appellant's house. Appellant testified that he arrived home on the day of the fire at approximately 5:00 a.m. and found J.C. alone. Appellant said he woke J.C. and asked him where his mother was. Appellant testified that because he did not like J.C. being home alone, he instructed J.C. to dress and told J.C. they were going to J.C.'s grandmother's home. Appellant estimated that they left the house between 5:20 and 5:30 a.m. Appellant testified that he drove J.C. to his grandmother's house, which took about 15 minutes, and dropped J.C. off. Appellant expected J.C. to go to school from his grandmother's house. Appellant did not wait to see if J.C. entered the house.

Appellant testified that after he dropped J.C. off, he stopped at a gas station, left his license as security for gasoline, and headed toward the Twin Cities. Just before appellant arrived in the Twin Cities, his sister called and told appellant that appellant's house was on fire and that J.C. was inside. Appellant told his sister that J.C. was at his grandmother's home. Appellant testified that he then called his wife's cell phone. An unfamiliar female answered the phone, identified herself as a police officer, and told appellant that his house was on fire and that J.C. was inside. Appellant testified that he dismissed the response as a prank because he knew that J.C. was at his grandmother's home. Appellant continued on his trip to the Twin Cities.

Appellant acknowledged speaking to a police officer on the day of the fire and telling the officer that he had not been in Fergus Falls since the previous Thursday. Appellant testified that he lied to the officer because of the "nasty" manner in which the officer had addressed him and because he wanted to speak with the officer in person. Appellant also acknowledged that he spoke with his wife and J.C.

several times before turning himself in to the authorities. Appellant testified that his return to Elizabeth was delayed because he had been awake for several days and needed to sleep, and because it took him a few days to raise money to buy gas for the trip.

After the close of evidence, the state asked the district court to instruct the jury that appellant could be found guilty of the charged crime of first-degree arson if "[appellant], or another for whose act [appellant] is liable, caused the fire." Over appellant's objections, the district court instructed the jury as requested by the state. But the district court did not instruct the jury regarding the legal principles that govern accomplice liability. Appellant did not request such an instruction or object to its omission.

In its closing argument, the state advanced several different theories regarding appellant's culpability. At one point, the prosecutor argued that "the evidence that the [s]tate has provided shows reasonably that [appellant] is the only person that was responsible for this fire." Another time, the prosecutor argued that "the evidence . . . [is] sufficient to show that someone's committed a crime. . . ." The prosecutor further stated, "I'm asking you to find [appellant] guilty of what we did give you and the fact that the evidence that's reasonable that is there to show that he's the one responsible for this crime." Finally, the prosecutor argued that the jury had "all [the] different pieces of evidence showing you what was collected at the scene and what reasonably leads to [appellant] starting this fire either by himself or with the assistance of [J.C.]"

The jury found appellant guilty of first-degree arson. The district court sentenced appellant to serve 50 months in prison and to pay restitution. This appeal follows.

## ISSUE

Did the district court err by failing to instruct the jury regarding accomplice liability law after instructing the jury that it could find appellant guilty of first-degree arson if the fire was caused by a person for whose act appellant is liable?

## ANALYSIS

Under Minnesota law, a person is criminally liable for a crime committed by another person if "the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1 (2006). To convict a defendant of aiding and abetting, the state must prove that the defendant played a knowing role in the commission of the crime. *Bernhardt v. State,* 684 N.W.2d 465, 477 (Minn.2004). Mere presence at the scene of a crime does not, by itself, prove liability for the crime of another because "[i]naction, knowledge, or passive acquiescence [ ] do not rise to the level" of criminal culpability. *State v. Russell,* 503 N.W.2d 110, 114 (Minn.1993). "To impose liability under the statute, the state must show that the defendant encouraged the principal to take a course of action which he might not otherwise have taken." *Id.* (quotation omitted).

District courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law. Furthermore, it is well settled that the court's instructions must define the crime charged. In accordance with this, it is desirable for the court to explain the elements of the offense rather than simply to read statutes." *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001) (citations omitted).

A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to challenge the instructions on appeal. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998). "[B]efore an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). If these three prongs are satisfied, we then assess whether we should address the error to ensure fairness and the integrity of the judicial proceedings. *Id.*

The district court based its jury instruction on the pattern instruction for first-degree arson. The pattern instruction reads, in relevant part: "The elements of arson in the first degree are:.... Third, the defendant (or another for whose act the defendant is liable) caused the (fire) (or) (explosion)." 10A *Minnesota Practice,* CRIMJIG 18.02 (1999).

When discussing the instructions to be given to the jury, the prosecutor specifically requested that the optional parenthetical language for the third element be included. The prosecutor noted that its case focused on appellant and J.C. The prosecutor argued that J.C. was obviously present with appellant and had gasoline on his clothing. Appellant's trial counsel objected to the inclusion of the optional language, arguing that the language "should simply be stated as 'the Defendant caused the fire.'"

The district court announced that it would include the optional language in the jury instructions, concluding, "[t]here are

facts which allow the jury to conclude that there was another for whose act [appellant] was liable involved there." Despite the district court's decision, appellant did not request an instruction regarding accomplice liability law or object to the omission of such an instruction.

Appellant now argues that the district court should have included an instruction consistent with 10 *Minnesota Practice,* CRIMJIG 4.01 (1999), which reads, in relevant part: "The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it." Appellant contends that the district court's failure to instruct the jury regarding accomplice liability law constitutes plain error because failure to instruct on an essential element of a crime is inherently prejudicial. Appellant relies on *State v. Mahkuk,* 736 N.W.2d 675 (Minn.2007), in arguing that the district court's instructions to the jury regarding accomplice liability misstated the law on an essential element, and therefore constituted plain error.

In *Mahkuk,* the district court instructed the jury on a charge of aiding and abetting first-degree murder. *Id.* at 680. The district court instructed the jury that it "could *consider* '[w]hether the defendant knew that a crime was going to be committed by the other participants' and '[w]hether the defendant intended his presence or acts to encourage or further the completion of the crime by the other participants.'" *Id.* at 682. The supreme court held that this instruction was in error because these considerations were not mere factors for the jury to consider, rather "they [were] facts the jury had to find beyond a reasonable doubt." *Id.* "The state had to prove, beyond a reasonable

doubt, that [the defendant] knew that his alleged accomplices were going to commit a crime and that [the defendant] intended his presence or actions to further the commission of that crime." *Id.* Thus, the district court erred in instructing the jury that it need only *consider* the defendant's knowledge and intent. *Id.*

 In this case, the district court instructed the jury that it could find appellant guilty of first-degree arson if "[appellant], or another for whose act [appellant] is liable, caused the fire." Yet the district court did not provide any explanation of accomplice liability law. "[I]n order to fulfill [its] judicial duty, [the district court] must charge the jury upon all applicable law." *Latourelle v. Horan,* 212 Minn. 520, 524, 4 N.W.2d 343, 345 (1942). Because the prosecutor argued an accomplice liability theory, it was necessary for the district court to inform the jury that the state was required to prove that appellant "played a knowing role in the commission of the crime." *State v. Gates,* 615 N.W.2d 331, 337 (Minn.2000), *abrogation on other grounds recognized by State v. Wright,* 726 N.W.2d 464 (Minn.2007). Viewed in their entirety, the jury instructions in this case did not provide a fair and adequate explanation of the applicable law. The omission of *any* instruction regarding accomplice liability law was error. We next consider whether the error was plain. *Griller,* 583 N.W.2d at 740.

 "Usually [clear or obvious error] is shown if the error contravenes case law, a rule, or a standard of conduct." *State v. Reed,* 737 N.W.2d 572, 583 (Minn. 2007) (quotation omitted). An error is "plain" if it is clear or obvious at the time of appeal. *State v. Jackson,* 714 N.W.2d 681, 690 (Minn.2006). "[The district court] must charge the jury upon all applicable law." *Latourelle,* 212 Minn. at 524, 4 N.W.2d at 345. The failure to properly

instruct the jury on all elements of the charged offense is plain error. *State v. Vance*, 734 N.W.2d 650, 658 (Minn.2007). When the state proceeds on an aiding-and-abetting theory, the state must prove beyond a reasonable doubt that the defendant knew his accomplice was going to commit a crime and intended his presence or actions to further the commission of the crime. *Mahkuk*, 736 N.W.2d at 682. Given that caselaw requires the district court to charge the jury upon all applicable law, and clearly defines the law that applies in an aiding-and-abetting case, we conclude that the district court's failure to provide any instruction regarding accomplice liability law was plain error.[1]

■ Having determined that the omission of any instruction regarding accomplice liability law was plain error, we must next determine if the error affected appellant's substantial rights. *Griller*, 583 N.W.2d at 740. Plain error is prejudicial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* at 741 (quotation omitted).

■ The state argues that the district court properly instructed the jury that the burden lay with the state to prove, beyond a reasonable doubt, that appellant caused the fire, and that the circumstantial evidence and corroboration of that evidence removed any reasonable likelihood that the district court's failure to instruct the jury regarding accomplice liability law had a significant effect on the jury's verdict. We disagree.

The evidence at trial showed a circumstantial connection between appellant and the fire. The evidence also showed a circumstantial connection between J.C. and the fire. Given the alternative theories argued by the prosecutor, the jury may have concluded that appellant was directly responsible for the fire or that appellant caused the fire with J.C.'s assistance. A third possibility, and the one that gives us concern, is that the jury may have concluded that J.C. started the fire and that appellant was liable for J.C.'s act simply because appellant is J.C.'s stepfather. Without any instruction regarding accomplice liability law, the jury was free to speculate regarding the meaning of "liability." It is therefore possible that the jury found appellant guilty based on an aiding and abetting theory without regard to the proper legal standard for accomplice liability. On these facts, where the evidence implicates a stepfather and his 14–year–old stepson in the commission of the crime, we will not ignore the possibility that the jury incorrectly based its verdict on common notions of parental liability. Instruction on the law regarding accomplice liability would have ensured that a guilty verdict premised on aiding and abetting was based on the correct accomplice liability standard. We therefore conclude that the omission of any instruction regarding accomplice liability law affected appellant's substantial rights.

Since we have determined that the district court's failure to instruct the jury regarding accomplice liability was error that was plain and affected appellant's substantial rights, we next determine whether we should address the error to ensure fairness and the integrity of the judicial proceedings. *Id.* at 740.

[1]. While advisory only, the comments to CRIMJIG 18.02 are also instructive. The comments read, in relevant part, "[i]n the third element, the parenthetical expression is included because arson frequently involves accomplices. See [Minn.Stat.] § 609.05. In such a case, the instructions regarding 'Liability for Crimes of Another' (CRIMJIG 4.01) should also be given." CRIMJIG 18.02, cmt. 1.

The prosecutor argued that appellant was solely responsible for the fire, and that appellant started the fire by himself or with the assistance of J.C. We recognize that the evidence supports either theory. But the prosecutor also argued that "someone" committed a crime and that appellant was responsible for the crime. And the district court did not instruct the jury regarding how to determine whether appellant was liable as an accomplice if another person caused the fire. If appellant's conviction rests upon an aiding-and-abetting theory without regard to the proper legal standard for accomplice liability, the fairness and integrity of the judicial proceedings are compromised.

Allowing appellant's conviction to stand when the jury was invited to find appellant guilty based on an aiding-and-abetting theory but was provided no instruction regarding accomplice liability law is inconsistent with fundamental notions of fairness and undermines confidence in the judicial proceeding. We recognize that the evidence linked appellant to the fire. But the evidence against appellant does not overcome our concern that the jury was given no instruction regarding how to determine appellant's liability under an aiding-and-abetting theory. *See State v. Jorgenson,* 758 N.W.2d 316 (Minn.App.2008) (reversing conviction and remanding for new trial based on erroneous jury instruction even though the evidence was sufficient to sustain the conviction). Principles of fairness and judicial integrity require reversal and remand for a new trial.

## DECISION

Because the district court's failure to instruct the jury regarding accomplice liability law was plain error that affected appellant's substantial rights, and because the error compromises the fairness and integrity of the judicial proceedings, we reverse and remand for a new trial.

**Reversed and remanded.**