*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0292**

State of Minnesota,
Respondent,

vs.

Sean David Kilbo,
Appellant.

**Filed December 15, 2014
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

Dakota County District Court
File No. 19HA-CR-12-3659

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Dain L. Olson, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his conviction of aiding and abetting making terroristic threats, arguing that the district court committed prejudicial plain error by not giving an

accomplice-testimony jury instruction and abused its discretion by not instructing the jury that "mere presence" is insufficient to establish accomplice liability. Appellant also argues that the district court improperly stayed imposition of sentence for both his terroristic-threats and aiding-and-abetting fifth-degree-assault convictions because they arose from the same behavioral incident. We affirm appellant's convictions but reverse his sentences and remand for resentencing.

**FACTS**

On June 12, 2011, appellant Sean Kilbo and another young man, C.K., were in Meadowlands Park in Eagan with Kilbo's then-girlfriend, K.H., and several other people. Kilbo and C.K. were having a "freestyle battle." C.K. began criticizing Kilbo's rapping, and the two got into a physical fight. When Kilbo stopped fighting, C.K. left. Later that night, C.K. received threatening phone calls from Kilbo, and he reported the incident at the park to the police.

The next day, Kilbo discussed with K.H. and several others a plan to lure C.K. back to the park to take "revenge." K.H. called C.K., saying that she wanted to talk to him about the incident. Through a series of text messages, they agreed to meet at the park. C.K. joined K.H. and two other females, and they began walking down a park trail. C.K. heard someone say, "Get him," or "Let's get him." Kilbo jumped out of the bushes and rushed up to C.K. Another male, whom C.K. believed to be Kilbo's friend, told Kilbo to hit C.K. Kilbo did so, and the two began fighting. While C.K. was hitting Kilbo on the ground, Kilbo called to his friend to come over and shoot C.K. The friend pulled out a BB gun and pointed it at C.K., who thought the gun was a real firearm and "backed

2

off." But Kilbo struck him, and the two resumed fighting. Kilbo's friend shot C.K. with the BB gun, and one of the females shot C.K. in the back with a taser and sprayed him in the face with mace. While C.K. was blinded by the mace, someone punched him in the face. Then everyone left, and C.K. walked to a nearby house where he used a hose to wash off and asked the homeowner to call the police.

Eagan Police Detective Heather Berens was assigned to investigate the case. She interviewed C.K., Kilbo, and K.H. Kilbo acknowledged that he fought with C.K. but asserted that he was the victim, denied that anyone other than K.H. and C.K. was present, and denied that anyone used a BB gun, taser, or mace. K.H. initially denied any knowledge of the incident, but eventually admitted that she was present and that Kilbo and several other individuals were involved, all looking for "revenge" after the first fight.

Kilbo was charged with aiding and abetting making terroristic threats (brandishing the BB gun) and aiding and abetting fifth-degree assault. Both C.K. and K.H. testified for the state, and the jury found Kilbo guilty on both counts. The district court convicted Kilbo of both offenses, stayed imposition of sentence as to both convictions, and placed Kilbo on probation. Kilbo appeals.

**DECISION**

I.  **The omission of an accomplice-testimony instruction did not impair Kilbo's substantial rights.**

Kilbo argues that the district court erred by not instructing the jury that accomplice testimony must be corroborated. Kilbo did not request an accomplice-testimony instruction or object to its absence. Accordingly, we review for plain error. *See State v.*

3

*Clark*, 755 N.W.2d 241, 251 (Minn. 2008). Under that standard, an appellant must demonstrate that there is (1) error; (2) that is plain; and (3) the error affected his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Plain error requires reversal only if "the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *State v. Barrientos–Quintana*, 787 N.W.2d 603, 611 (Minn. 2010) (quotation omitted).

A defendant cannot be convicted based on the "testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2010). Accordingly, district courts must give an accomplice instruction in any "case in which it is reasonable to consider any witness against the defendant to be an accomplice." *Barrientos–Quintana*, 787 N.W.2d at 610 (quotation omitted). This "duty arises from the very real possibility that a jury might discredit all testimony except the accomplice testimony, and thus find the defendant guilty on the accomplice testimony alone." *State v. Cox*, 820 N.W.2d 540, 548 (Minn. 2012) (quotations omitted).

The parties dispute whether K.H. could reasonably be considered an accomplice. A witness is considered an accomplice if he or she could have been charged with and convicted of the crime with which the defendant is charged. *Barrientos–Quintana*, 787 N.W.2d at 610. Where the question of a witness's accomplice status is "close," the district court should instruct the jury on the accomplice-testimony rule and leave the fact question as to the witness's status for the jury's determination. *Id.* at 612. This record presents at least a fact issue as to whether K.H. was an accomplice, particularly in light of

4

the evidence that she was part of a group planning "revenge" against C.K. and that she brought C.K. to the park in furtherance of that plan. On such a record, existing caselaw requires an accomplice-testimony instruction. *See id.* We conclude the district court plainly erred by omitting the instruction. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (holding that an error is plain if it "contravenes case law, a rule, or a standard of conduct").

However, that error warrants reversal only if it impaired Kilbo's substantial rights. An appellant bears a "heavy burden" under this third prong of the plain-error test; he must show that "there is a reasonable likelihood that [the error] had a significant effect on the jury verdict." *Barrientos–Quintana*, 787 N.W.2d at 612 (alteration in original) (quotation omitted). When the record contains the required corroboration, reversal is unwarranted. *See id.* at 613 (holding that defendant's substantial rights were not impaired by plainly erroneous omission of accomplice-testimony instruction because "the corroborating evidence was sufficient").

Kilbo argues that he meets his burden because there is no evidence corroborating K.H.'s testimony that Kilbo and his friend planned revenge against C.K., and that Kilbo knew the other male possessed the BB gun and called out to him to shoot C.K. We disagree. Corroborative evidence does not need to confirm every aspect of an accomplice's testimony. *See Clark*, 755 N.W.2d at 255 (rejecting analysis focused "narrowly on whether the evidence corroborated specific statements during [the accomplice's] testimony"). Rather, corroborative evidence need only "affirm the truth of the accomplice's testimony and point to the guilt of the defendant in some substantial

5

degree." *State v. Reed*, 737 N.W.2d 572, 584 (Minn. 2007) (quotation omitted). "Circumstantial evidence indicating the defendant's participation in the crime is sufficient to corroborate the accomplice's testimony." *State v. Bowles*, 530 N.W.2d 521, 532 (Minn. 1995). The record as a whole reveals sufficient corroboration.

First, C.K.'s testimony both affirms the truth of K.H.'s testimony and independently establishes that Kilbo aided and abetted making terroristic threats for displaying a BB gun.[1] C.K. testified that "[Kilbo's] friend came up with a BB gun" while he and Kilbo were fighting, and his testimony supports an inference that Kilbo was not surprised to see the gun. Specifically, C.K. testified that he stopped fighting with Kilbo because he believed the gun was "real," but Kilbo reengaged him while he was focused on the gun and "then [Kilbo's] friend came up and shot" him. And C.K. testified that Kilbo, the male with the BB gun, and the females all left together. This testimony as a whole establishes that Kilbo and his friend acted cooperatively to terrorize C.K. by brandishing the BB gun at him in a threatening manner. *See* Minn. Stat. § 609.713, subd. 3(a) (2010) (defining terroristic threats).

Second, the record contains ample additional evidence that affirms the truth of K.H.'s testimony. It is undisputed that C.K. and Kilbo fought on June 12, and substantial evidence establishes that Kilbo threatened C.K. later that evening, which establishes a motive for the terroristic-threats offense. *See Clark*, 755 N.W.2d at 254-55 (including defendant's participation in preparation for the criminal act and motive as facts that may

---

[1] Kilbo does not challenge his assault conviction.

6

corroborate an accomplice's testimony). And Kilbo's statement to Detective Berens was inadequate and inconsistent with the physical evidence. *See State v. Pederson*, 614 N.W.2d 724, 732 (Minn. 2000) (noting that inadequacies in defendant's statements and suspicious or unexplained conduct before or after the crime may corroborate accomplice testimony). Kilbo confirmed that he was at the park and fought with C.K. on June 13 but denied both the other male's presence and the presence of any weapons. In light of the uncontroverted evidence establishing that C.K. was shot by a BB gun and a taser and sprayed with mace, Kilbo's denials tend to corroborate K.H.'s more inculpatory testimony.

In sum, the record contains extensive evidence corroborating K.H.'s testimony and establishing Kilbo's guilt. There is no reasonable likelihood that the omission of an accomplice-testimony instruction had a significant effect on the jury verdict. Accordingly, we conclude that Kilbo's plain-error challenge fails.

## II. The district court did not abuse its discretion by denying Kilbo's request for a "mere presence" instruction.

A district court has "considerable latitude" in crafting jury instructions. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). Jury instructions are viewed as a whole to determine whether they accurately state the law in a manner that the jury can understand. *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn. 2012). We review the refusal to give a requested instruction for abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). And if a district court erred in its instructions, we determine whether the error was harmless. *State v. Pendleton*, 759 N.W.2d 900, 907 (Minn. 2009).

A party is entitled to an instruction on his theory of the case if there is evidence to support it. *State v. Coleman*, 373 N.W.2d 777, 781 (Minn. 1985). But a court need not give a requested instruction if it determines that the instruction will mislead or confuse the jury. *See State v. Larson*, 787 N.W.2d 592, 601 (Minn. 2010). When reviewing whether a particular instruction should have been given, we view the evidence in the light most favorable to the party requesting the instruction. *Turnage v. State*, 708 N.W.2d 535, 545–46 (Minn. 2006).

Kilbo requested an instruction that "mere presence" is insufficient to prove that he aided and abetted making terroristic threats. *See State v. Williams*, 759 N.W.2d 438, 443 (Minn. App. 2009) ("Mere presence at the scene of a crime does not, by itself, prove liability for the crime of another . . . ."). The district court agreed with the state that "those are not the facts alleged in this case" and declined to give the instruction. Kilbo contends that the evidence, viewed in the light most favorable to him, supports his theory that he was "merely present" when his friend made the terroristic threat. We disagree. Viewing all of the evidence, including K.H.'s corroborated testimony and Kilbo's own statement to Detective Berens, in the light most favorable to Kilbo yields, at best, an explanation that Kilbo was fighting with C.K. when his friend unexpectedly threatened C.K. with a BB gun. But Kilbo then reengaged C.K. and continued to fight while others shot C.K. with the gun and a taser and sprayed him with mace. We conclude the district court did not abuse its discretion by determining that this evidence does not support a "mere presence" instruction.

8

Finally, Kilbo argues in his reply brief that the district court erred by not instructing the jury that in order to find Kilbo guilty as an accomplice, it must find that he knew his alleged accomplice was going to commit a crime *and* he intended his presence or actions to further the commission of that crime, as required under *State v. Milton*, 821 N.W.2d 789, 808 (Minn. 2012). This argument is related to the issue of "mere presence" but is materially different, and the state did not raise it in its brief. Accordingly, it is not properly before us, and we decline to address it. *See State v. Yang*, 774 N.W.2d 539, 558 (Minn. 2009) (holding that challenge to accomplice-liability instruction raised for the first time in reply brief was waived).

## III. The district court erred by staying imposition of sentence as to both convictions.

When a single behavioral incident results in the violation of multiple criminal statutes, the offender may be convicted of multiple offenses but punished and sentenced for only one of the offenses. Minn. Stat. § 609.035, subd. 1 (2010); *see Ture v. State*, 353 N.W.2d 518, 523 (Minn. 1984). The state has the burden of proving that offenses are separate behavioral incidents before multiple sentences may be imposed. *State v. Williams*, 608 N.W.2d 837, 841–42 (Minn. 2000). The record indicates that Kilbo's assault and terroristic-threats convictions shared a common time, place, and criminal objective, and the state agrees that they are based on a single behavioral incident. On this record, we conclude the district court erred by pronouncing sentences for both convictions. We reverse Kilbo's sentences and remand for the district court to vacate the assault sentence and resentence Kilbo solely on the terroristic-threats conviction. *See*

9

*State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (stating that Minn. Stat. § 609.035 contemplates a defendant who commits multiple crimes as part of the same behavioral incident will be sentenced on the most serious offense).

**Affirmed in part, reversed in part, and remanded.**